161 So.2d 467 (1963)
Estella FONTENOT, Plaintiff-Appellee,
v.
MARQUETTE CASUALTY COMPANY, Defendant-Appellant.
No. 979.
Court of Appeal of Louisiana, Third Circuit.
December 3, 1963.
On Rehearing February 18, 1964.
*468 Mouton, Champagne & Colomb, by Patrick Colomb, Lafayette, Taylor, Porter, Brooks, Fuller & Phillips, by John I. Moore, Baton Rouge, for defendant-appellant.
Simon & Trice, by J. Minos Simon, Lafayette, for plaintiff-appellee.
Before SAVOY, HOOD and CULPEPPER, JJ.
SAVOY, Judge.
This is an action in tort arising out of an automobile accident which occurred on December 21, 1962, on Louisiana Highway 35 in Vermilion Parish, Louisiana. In her original petition, plaintiff prayed for judgment against Whitney Noel and his alleged insurer, Marquette Casualty Company, in solido. Subsequently, the suit was dismissed as against Marquette Casualty Company, and Michigan Millers Mutual Insurance Company was named as defendant and insurer of Whitney Noel.
Plaintiff alleged she was riding as a guest passenger in a 1954 model Chevrolet automobile owned and operated by William Hargrave, when it was struck from the rear by a vehicle which was negligently operated by Whitney Noel. She also alleged she suffered personal injuries and loss of wages as a result of the accident.
Answers were filed by the defendants wherein the allegations of the plaintiff's petition were denied, and it was alleged that Whitney Noel was guilty of no negligence whatsoever which could be considered a proximate cause of the accident. Alternatively, it was alleged that plaintiff was on a joint mission with William Hargrave; that the automobile was under their joint care and control; and, that negligence on the part of William Hargrave was imputable *469 to plaintiff. It was further alleged that plaintiff was contributorily negligent.
The defendants made a third party demand against William Hargrave, alleging him to be guilty of negligence, and as an alternative prayer, alleged that William Hargrave should be cast in judgment, in solido, with defendants for an equal contribution to any damages awarded to plaintiff.
William Hargrave answered the third party demand, denying liability, and entered a reconventional demand against Whitney Noel for damages to his automobile and for personal injuries. The allegations of the reconventional demand were generally denied by defendants.
Prior to trial, plaintiff dismissed her suit against Whitney Noel as of nonsuit.
The case was tried by jury on June 24, 1963. On verdicts by the jury, a judgment was entered in favor of plaintiff, Estella Fontenot, in the amount of $18,000.00, and in favor of William Hargrave in the amount of $775.00. Michigan Millers Mutual Insurance Company has filed an appeal to this Court, and appellees have filed an answer to the appeal.
The issues raised by appellant are (1) whether plaintiff proved that Whitney Noel was negligent; (2) whether William Hargrave was negligent; and (3) whether the awards of damages are excessive.
Appellees answered the appeal and raised the following issues: (1) whether damages should be awarded because of a frivolous appeal; (2) whether appellant could appeal without first having made a motion in the trial court for a new trial or for a remittitur; and (3) whether this Court can re-examine a jury verdict under the Constitution of the United States or under the law of this State.
The record shows that the accident in question occurred about 9:30 P.M. on December 21, 1962, on Louisiana Highway 35 approximately two miles south of Kaplan, in Vermilion Parish, Louisiana. Plaintiff was riding in the right front seat of a 1954 model Chevrolet automobile owned and being driven by William Hargrave, at a speed of 30 to 35 miles per hour in a southerly direction along the highway. Whitney Noel was also driving his 1962 Ford pick-up truck in a southerly direction, and drove the truck into the rear of the 1954 model Chevrolet automobile. At the time of the accident, another vehicle was approaching from the south about a city block away. There was a drizzling rain and some fog. Whitney Noel testified that he never saw the Hargrave automobile prior to the time of the collision, and that he did not apply his brakes. The accident occurred in the southbound lane of traffic on the highway, after which the 1954 model Chevrolet proceeded into the ditch on the right side, or west side, of the highway. The 1954 model Chevrolet was a total loss, and the damage to the Hargrave truck amounted to $670.00. Whitney Noel testified he was rendered unconscious by the accident. Plaintiff, Estella Fontenot, was also rendered unconscious by the force of the impact, and she was taken promptly to the Abrom Kaplan Memorial Hospital in Kaplan, Louisiana, for treatment of her injuries.
The issues raised by appellees will be considered first, but in reverse order.
Appellees maintain the findings of the jury as to facts are final and that the re-examination by this Court of the jury verdicts is proscribed by the provisions of the Seventh Amendment to the Constitution of the United States. Alternatively, it is urged that if such review is not proscribed by this article, then once a jury trial has been granted by state law, and verdicts have been rendered, the rights accruing to the appellees thereunder by the verdicts so rendered are inalienable rights implicit in the concept of ordered liberty and are secured to appellees by the Fourteenth Amendment to the Constitution of the United States. In support of this contention, the historical development of the trial by jury is traced by counsel for appellees, with its interpretation by the Federal Courts being stressed.
*470 Counsel for plaintiff contends that the appellate courts of this State have fallen into error in the interpretation of the authority vested in them in relationship to the facts involved in jury cases by erroneously assuming that Louisiana Constitution Article 7, Section 29, LSA, impowers them to supplant the verdict of the jury with their own decision simply because they have authority to review the facts. It is urged that the provisions of Louisiana Constitution Article 7, Section 29, and Article 7, Section 41, providing for a trial by jury, should be considered in pari materia in such a manner as to give effect to both, and in line with the Federal Courts, that the Louisiana appellate courts should review the evidence to determine only the existence of probative facts supportive of the verdict, and not to determine the sufficiency of such facts, thereby granting integrity and reality to jury verdicts and to the right of trial by jury.
In connection with this argument, we are bound by the decisions of the Supreme Court of this State that the right to trial by jury as expressed in the Seventh Amendment to the Constitution applies only to the federal courts and not to the proceedings in state courts; and further, that the Fourteenth Amendment of the Constitution made no changes on the subject of jury trials and civil suits. State ex rel. Morgan v. Kennard, 25 La.Ann. 238; Woodruff v. Lobdell, 25 La.Ann. 658; State v. Carro, 26 La.Ann. 377; and, Day v. Louisiana Central Lumber Co., 144 La. 820, 81 So. 328. These rulings are consistent with federal decisions on these points. Further, it has been held that the Louisiana Constitution of 1921 Article 7, Section 29, grants the appellate courts of this State the authority to increase or decrease the amounts of any judgment appealed from. Jenkins v. American Automobile Insurance Company, (La.App., 2 Cir., 1959), 111 So. 2d 837.
Appellees also urge that the question of quantum is presented for review as a justiciable controversy, in connection with a jury verdict, only after it has been presented to the trial court in connection with a motion for remittitur or additur pursuant to the provisions of LSA-C.C.P. Art. 1813. This argument is closely allied to the issue discussed above. However, this article does not require that appellants file for a new trial and/or a remittitur before having a right to appeal. The article provides a permissive, not mandatory, procedure. Further, the right to appeal and a complete review of the proceedings by the Courts of Appeal is guaranteed by the Constitution of Louisiana.
We find no merit in appellees' request for damages because of a frivolous appeal. This request is based on the proposition that there are no substantial legal questions presented by the appeal, and is also closely allied with the issue of the right to trial by jury. We find the appeal was not taken frivolously.
We now turn our attention to the issues raised by appellant. We find that the preponderance of the evidence supports the findings of fact by the jury that the defendant, Whitney Noel, was negligent, and that William Hargrave was free from negligence. Whitney Noel admitted that he never saw the automobile in front of him, nor did he apply his brakes prior to the impact. In view of the bad weather condition, it was obvious that Whitney Noel was negligent in failing to keep a proper look-out and/or driving at an excessive rate of speed and failing to keep his vehicle under proper control. Nor is there any evidence that William Hargrave was negligent. Although it is contended that the Hargrave automobile did not have tail lights, the record is bare as to any proof in this connection. Mr. Noel did not see the vehicle, and William Hargrave testified positively that his tail lights were working. The testimony of William Hargrave and plaintiff is to the effect that Hargrave was driving his automobile at a reasonable rate of speed in his own lane *471 of traffic, and was guilty of no negligence relating to the collision. The jurisprudence is well established that the operator of the following vehicle is required to keep his car under control; to observe the forward vehicle; to follow at a safe distance; and, if a rear end collision occurs, the following vehicle is generally presumed to be negligent. Foster v. Phoenix Insurance Co., (La.App., 1 Cir., 1962), 146 So.2d 647.
The final issue for our decision is whether or not the jury awards are excessive.
The record shows the two vehicles collided with considerable force, and that plaintiff was rendered unconscious for a short period of time. She testified to considerable pain, with some pain continuing to the date of the trial, and of disability from doing any labor requiring her to stoop, to lift heavy objects, or to remain on her feet any length of time.
Dr. Gaulman Abshire, a general practitioner in Kaplan, Louisiana, treated plaintiff in the emergency room at the Abrom Kaplan Memorial Hospital in Kaplan, and followed her on a course of treatment until April 2, 1963. He found plaintiff to have a large hematoma of the forehead, and a deep laceration in her left knee, in the nature of a puncture wound extending two and a half inches in length. X-rays revealed a questionable fracture of the skull, a small linear fracture of the frontal bone, which was not depressed. X-rays of the pelvis revealed fractures to both the superior and inferior rami of the right pubic bone. Followup X-rays showed a displacement of the fracture to the superior rami of the right pubic bone. Plaintiff remained in the hospital four weeks, during which time she was given antibiotics to prevent infection and other medicines to absorb the hematoma and to reduce her pain. No traction was administered. After the hospital treatment, plaintiff was kept three additional weeks in bed at home to allow healing of the pelvic fractures. Plaintiff was then placed on crutches with instructions not to put weight on her legs. Dr. Abshire testified that the plaintiff continued to complain of headaches and of pain in the area of the pelvic bone and in her left knee. He continued the prescriptions for pain medicines. He expected a gradual increase in motion, and, ultimately, he did not feel there would be any permanent disability. He felt the headaches were due to post-cerebral concussion, and that they would eventually go away.
Dr. Blase Salatich, a specialist in orthopedic surgery, practicing in New Orleans, Louisiana, examined plaintiff on April 30, 1963. By examination of plaintiff's head, he found deep fading ecchymosis, with headaches and throbbing pains in the right side of her head. Such a finding would require a fair sized blow as would give a person a cerebral concussion; and he felt there was a possibility of persistent painful headaches of a permanent nature. He felt plaintiff had a torn medial semilunar cartilage in her left knee and that this was a permanent type injury. He would not recommend an operation because of plaintiff's age. This is a progressive type injury. By X-ray examination, Dr. Salatich found two fractures of the right pelvis and one fracture of the left pelvis, and indicated that a fair amount of force would be required to fracture these heavy bones. He concluded there must have been some tearing of the ligaments and muscle attachments overlaying and adjacent to the fractures themselves, and since nature repairs these with scar tissue, they lose their normal pliability and become painful, dense structures. The loss of flexibility would likely increase with age. He noted hip discoloration indicating injury to the muscles, ligaments and attachments in the area. The fractures of the bones were healed satisfactorily, and the one-quarter inch displacement was considered a satisfactory position. He concluded plaintiff's complaints of the hip were because of the soft tissue injury, and that because of scarring, the symptomotology associated with the injuries could be permanent. He *472 recommended formal physiotherapy treatments to the three areas injured for approximately eight or nine months, and was of the opinion that a final orthopedic evaluation should be postponed until at least a year or more from the date the injuries were received.
Dr. Norman P. Morin, an orthopedic surgeon in Lake Charles, Louisiana, examined plaintiff on June 13, 1963. He found a one-quarter inch scar over her right forehead, tender to palpatation, with no deep masses, increased warmth or inflammation. He did not believe there was any evidence of cranial involvement, but noted that the injury to the head was not within the realm of his treatment as an orthopedic surgeon. He found a two and one-quarter inch long angulated scar on the inside of the left knee. He did not feel this was a deep cut since it was free from deep structures. He noted the absence of any masses, swelling, increased heat, synovial thickening or effusion within the knee. Plaintiff complained of movement of the kneecap and of tenderness of the inside of the thigh bone. Flexion of the knees on both sides were equal, and plaintiff was able to extend fully her left knee, although these movements caused some pain or discomfort. In testing the knee, he found no clicking, and could not produce locking of the knee. He found the knee to be stable with the ligamentous structures intact, and did not believe there was a tearing of the cartilages within the knee. Dr. Morin found the fractures to the pelvic bones, and a three-sixteenth inch indentation to the superior rami of the right public bone. He agreed that a forceful movement was required for the breaking of these bones. He did not deny that there may have been some tear of the fibers; that the scarring from the healing process has caused her pain; and, that there is some scarring of the ligaments. He was of an opinion that this was not extensive and felt that the discomfort from the healed pelvic fractures must be mild, although perhaps at the time of the trial it prevented her from housework. His prognosis as to both the hip and the knee was very favorable. He believed the plaintiff to be telling the truth in answer to his questions concerning her pain on movement of the knee and hip.
The jury was instructed by the district judge to make a lump sum award should it find in favor of plaintiff. In accordance with these instructions, the jury rendered a verdict in favor of Mrs. Estella Fontenot in the sum of $18,000.00.
Plaintiff offered in evidence the special damages incurred by her as follows: hospital charges$674.25; radiology charges for X-rays taken on behalf of Mrs. Fontenot$45.00; Dr. Gaulman Abshire, treating physician$276.10; Dr. Salatich $50.00; and, cost for knee support$12.00. These items, amounting to $1,007.35, were not contested by counsel for defendants.
There was some controversy about the amount which should be awarded Mrs. Fontenot for loss of wages. The record reveals Mrs. Fontenot worked as a housekeeper prior to the accident at a salary of $15.00 per week. It was stipulated by counsel for all parties that if Mr. James Quebodeaux were called as a witness, he would testify that he had engaged Mrs. Fontenot as a house maid at a salary of $15.00 per week. Mrs. Fontenot also claimed an additional sum of $10.00 per week because of ironing she did after she completed her job as a housekeeper. Plaintiff was injured on December 21, 1962. The instant case commenced on June 25, 1963. Dr. Salatich recommended physiotherapy treatments for eight to nine months following the date of trial referred to above. This Court is of the opinion that Mrs. Fontenot should be entitled to $600.00 for loss of wages. This is for a period of ten months, or approximately 39 weeks.
There is not sufficient evidence in the record to substantiate Mrs. Fontenot's loss *473 of wages because of the ironing she did prior to the accident in the instant case.
Dr. Salatich recommended physiotherapy treatments for eight to nine months following the date of trial, beginning three times a week until Mrs. Fontenot showed some signs of improvement; thence twice a week for a while; and once a week until her discharge by the physiotherapist. He said the usual charges for a patient with injuries such as Mrs. Fontenot had would be $7.50 per treatment. This Court is of the opinion that $500.00 is a fair award for this treatment.
After reviewing the evidence and cases cited by counsel for plaintiff and defendant, this Court is of the opinion that an award of $12,500.00 should be allowed Mrs. Fontenot for physical injuries, pain and suffering which she suffered as a result of the accident in the instant case.
This Court is aware of the recent decision by our State Supreme Court in Gaspard v. LeMaire, La., 158 So.2d 149, opinion on rehearing November 12, 1963. In the instant case, the award made by the jury is out of proportion with previous awards made for somewhat similar injuries, and accordingly, we think the award is manifestly excessive.
Appellant also urges that the award granted to William Hargrave in the amount of $775.00 is also excessive. It is maintained that the jury awarded Mr. Hargrave full value for his automobile, and did not take into consideration the depreciation on the car or its salvage value; further, that there was a complete absence of evidence as to the loss of two weeks wages; and further, that personal injuries of only $400.00 was awarded to Mr. Hargrave, since this was the figure mentioned by counsel for plaintiff in his closing argument.
The award made by the jury was in the lump sum amount of $775.00. Although Mr. Hargrave's knee did not give him too much trouble on the night of the accident, it began to hurt the following day and he made three visits to Dr. Gaulman Abshire. Dr. Abshire testified as to the bad bruise on Hargrave's left knee, and that Hargrave had complained of pain for approximately two weeks. Two weeks after the accident, Dr. Abshire released Hargrave to return to his employment with the City of Kaplan. Hargrave also testified to pain in the back of his neck which persisted for approximately one month, and that he still feels pain in this area on occasion when he raises something heavy. He purchased the 1954 model Chevrolet automobile approximately nine months before the accident for $375.00. In view of this evidence, we have no difficulty in deciding that the award of $775.00 to William Hargrave was not excessive.
For the reasons assigned, the verdict of the jury and the subsequent judgment of the district court is hereby amended by reducing the award to Mrs. Estella Fontenot from the sum of $18,000.00 to the sum of $14,607.35. In all other respects, the judgment in the instant case is affirmed at appellees' costs.
Amended and affirmed.

On Rehearing.
En Banc.
PER CURIAM.
A reargument was granted in this appeal, with especial regard to the pertinence of the recent Supreme Court decision in Gaspard v. LeMaire, 245 La. 239, 158 So. 2d 149, the decision in which became final after we rendered our original opinion herein.
The evidence with regard to the injury suffered is set forth in our original opinion. At the time it was rendered, we were of the opinion that the award in question was out of proportion with other awards *474 made in the past for somewhat similar injuries.
Upon reconsideration, we do not find that the award made by the trial jury in this case, in the light of the facts and circumstances peculiar to it, is so out of proportion with such previous awards as to be manifestly excessive.
For the foregoing reasons, our original judgment herein is hereby amended to reinstitute the original trial award to Mrs. Estella Fontenot, and, as thus amended, it is affirmed in all other respects. The defendant-appellant to pay all costs of this appeal.
Trial court judgment affirmed.