184 So.2d 766 (1966)
Sidney LUQUETTE et ux., Plaintiffs-Appellees,
v.
Willard BOUILLION et al., Defendants-Appellants.
No. 1644.
Court of Appeal of Louisiana, Third Circuit.
March 22, 1966.
Rehearings Denied April 19, 1966.
*768 Davidson, Meaux, Onebane & Donohoe, by Joseph Onebane, Lafayette, for defendant-appellant.
Simon, Trice & Mouton, by J. Minos Simon, Lafayette, for plaintiff-appellee.
Before TATE, FRUGE, and HOOD, JJ.
TATE, Judge.
This is a damage suit arising out of an accident involving vehicles driven by Wilfred Bouillion and by Sidney Luquette (in which his wife was a passenger). Mr. and Mrs. Luquette sue Bouillion and the latter's employer and liability insurer. After trial by jury, Mrs. Luquette was awarded $25,000 for her personal injuries, and Mr. Luquette $1,000. The defendants appeal. The plaintiffs answer the appeal to request certain relief.
The accident occurred when the defendant Bouillion's pickup truck slammed into the rear of the Luquette vehicle. The latter car was thrust forward and struck a preceding left-turning automobile. Under the evidence, the defendant Bouillion's negligence in his excessive speed and his failure to control his vehicle was undoubtedly the sole proximate cause of the accident.
The chief issue of this appeal is posed by the defendant-appellants' contention that the award to Mrs. Luquette is excessive.
1. Mrs. Luquette's injuries.
The two impacts caused Mrs. Luquette to sustain two violent and immediately consecutive "whiplash"-type motions of her body.[1] She was thrust forward-backward first when the Bouillion car struck her car from the rear, and then immediately again when her automobile was thrust into the preceding vehicle.
Following the impacts, Mrs. Luquette suffered severe pain in her neck and low-back, and she was unable to move. She was taken by ambulance to the hospital, where she remained for twelve days, with heavy medication to relieve pain and reduce symptoms during much of this interval. Due to crippling manifestations of the pain, she was hospitalized again in April for a few days, and again in November for nine days.
The initial attending physician's diagnosis of the principal injuries sustained by her is that Mrs. Luquette, aged 47, had suffered severe sprain injuries in the cervical (neck) and lumbar (lower back, below waist) areas of the spine. These sprains resulted from tears of the ligaments running alongside the bony part of the spine. This diagnosis was confirmed by an attending surgeon as well as by two other examining specialists. It was corroborated by persistent objective symptoms, including muscle spasm. As the medical evidence proves, although all strains[2] and most strains[3] will heal without functional residual, unfortunately Mrs. Luquette's injuries have resulted in a permanent residual disability which will be intermittently painful for the remainder of her life.
According to the great preponderance of the evidence, the spraining ligamentous *769 tears produced by Mrs. Luquette's accident has produced permanent disabilities in the affected areas of the neck and low-back. The mobility of the joints of her neck and of the low-back is limited by the permanent ligamentous damage resulting from the scarring caused by the tearing, which scar tissue causes irritation to the nerve fibers running from the adjacent spine and thus produces symptoms of pain. As a result, Mrs. Luquette will have some restriction of motion in the affected areas for the remaining twenty-six years of her life expectancy, as well as recurrent episodes of some pain. The irritation of the nerves supplying the leg has produced some weakness in this member.
The trial took place approximately a year after the accident. At the time, Mrs. Luquette had suffered episodes of severe pain extending for eight months after the accident. At the time of trial, she still suffered from recurring headaches and periodic episodes of low-back pain for as much as 2-3 days per week. The medical evidence preponderantly indicates that she had reached maximum recovery from the injuries received in the accident.
As a result of her injuries, Mrs. Luquette's activities have been much curtailed. Before the accident, she did her own housework, worked in her garden, and had a normal social life. Following the accident, she was unable to do any housework or be physically active to any degree for several months, and by the time of the trial she was still able to do only light housekeeping duties. Because of fear of falling she uses a cane. Her physical and social activities are greatly restricted by the residual from the injuries sustained in the accident.
Mrs. Luquette's counsel also contends that the irritation of nerve fibers caused by the ligamentous scarring has produced secondary effects, such as visual disturbances (a blurring of vision, perceived rings obscuring vision), a weakness of grip, and an instability of gait resulting from the leg weakness. In our opinion, the medical evidence as a whole, including especially the opinion of the attending physician and of the attending surgeon, both of whom treated Mrs. Luquette over an extended period of time, does not prove that these serious secondary effects are other than temporary insofar as causally related to the accident. For instance, while the medical testimony is uncontradicted that some such visual disturbance may sometimes result temporarily from a cervical sprain, an eye-specialist who examined Mrs. Luquette was of the opinion that any deficiencies or blurring of vision now suffered by her, almost a year after the accident, are the result of the normal progression of cataracts pre-existing and not causally related to the accident.
2. Excessiveness or not of award for Mrs. Luquette's personal injuries.
With regard to the appellate review of general damages, the trier of fact has much discretion in this regard, and this discretion should not be disturbed on appeal in the absence of clear abuse. LSA-Civil Code Art. 1934(3); Ballard v. National Indemnity Co., 246 La. 963, 169 So.2d 64; Gaspard v. LeMaire, 245 La. 239, 158 So.2d 149. The appellate court should "review all the facts and circumstances on which the lower court based the quantum of award, but this review is confined to determining whether there has been an abuse of the `much discretion' vested in the trial court in assessing damages. After a review of all the facts and circumstances, if the appellate court finds that there has been an abuse of discretion, the amount of the award should be increased or decreased as the case warrants. * * * The amounts of awards in so-called `similar' cases are relevant only to determine whether there has been an abuse of discretion, but for no other purposethat is, to determine whether the award is so excessive or so inadequate as to be an abuse of discretion." Ballard at 169 So.2d 67.
*770 The trial jury awarded $25,000 to Mrs. Luquette for the personal injuries previously described. For very similar personal injuries, an award of $16,000 was affirmed in Mathews v. Employers Mutual Fire Ins. Co., La.App. 2 Cir., 180 So.2d 38 (syllabus 5); this seems to be the highest previously reported award for spraining injuries with permanent residual. Other awards for whiplash-type sprain injuries resulting in some permanent residual pain or permanent disability have been in the area of ten thousand dollars: Poleman v. Employers Liability Assurance Corp., La. App. 3 Cir., 164 So.2d 630 ($10,000); Carvell v. Winn, La.App. 3 Cir., 154 So.2d 788 ($7,000); St. Blanc v. Andras, La. App. 4 Cir., 148 So.2d 850 ($7,500); Self v. Johnson, La.App. 3 Cir., 124 So.2d 324 ($9,237.50). However, the injuries discussed in the latter-cited decisions do not seem to have been as disabling or as painful as Mrs. Luquette's. Taking into consideration these awards in somewhat similar cases, a majority of the court concludes that the award of $25,000 to Mrs. Luquette was an abuse of the discretion of the trier of fact and that this award should therefore be reduced to $15,000.
The appellees argue that the circumstance that much lower awards were made for generically seemingly-similar injuries in other cases should not bar affirmance of the greater award to this particular plaintiff, Mrs. Luquette. It is contended that the greater award may be justified by her perhaps lower threshold of pain or by other circumstances peculiar to this case, or in view of the medical evidence developed in this particular record, which may have explored the serious ramifications of Mrs. Luquette's injuries more thoroughly and intensively than did the medical testimony in the other allegedly comparable decisions. The appellees point out that actually the comparability or not in these particulars of the respective injuries and medical testimony cannot be ascertained from the abbreviated appellate discussions in the reported cases. However persuasive some members of this court may find such arguments[4], our Supreme Court has rejected such an approach in favor of that followed by the present majority opinion[5].
3. Other contentions by the appellants.
The appellants contend also that the jury verdict should be set aside and a new trial ordered because the verdict was the product of bias, passion, and prejudice resulting from (1) an alleged fit of hysteria and weeping on the part of the plaintiff Mrs. Luquette when the jury was nearby and (2) alleged inflammatory statements made to the jury by the counsel for the appellants in his closing arguments.
As to (1), we note first that, while the factual argument made by the defendants' attorney to the trial court and its factual contradiction by opposing counsel is transcribed, there is nevertheless no actual evidence in the record that Mrs. Luquette's alleged crying fit in the hall of the courthouse was or could have been observed by the jury. In the second place, the trial judge was in a better position than is this appellate court to determine whether an incident of crying or hysteria has an unduly prejudicial effect upon a jury; in absence of clear abuse, the trial judge's sound discretion in denying a mistrial or new trial sought for such cause will not be disturbed on appellate review. Begnaud v. Texas & New Orleans Railroad Co., La. App. 3 Cir., 136 So.2d 123, certiorari denied.
*771 As to (2), the defendants-appellants, unbeknownst to the counsel for the appellees, had the court reporter transcribe the plaintiffs' counsel's opening and rebuttal arguments to them; but counsel for defendants-appellants neglected to instruct the court reporter to transcribe the intervening oral argument made by himself.
Prior to the adverse verdict the defendants did not object to several of the now-allegedly prejudicial statements; as to these an appellant is deemed to have waived the right to complain, since by such failure to object the trial court was afforded no opportunity to prevent or cure the alleged error prior to submission of the case to the jury. Bertoli v. Flabiano, La.App. 1 Cir., 116 So.2d 76, 79; 88 C.J.S. Trial § 196.
Further, in the absence from the record of the intervening argument by the defendants' counsel, we cannot ascertain the context of statements in the plaintiffs' rebuttal argument which are alleged to be prejudicially improper; if those complained of are assumed arguendo to be improper in at least some circumstances when made, the propriety or not of a particular argument made at a particular time must be determined in the light of the facts of the particular case, the conduct and atmosphere of that particular trial, and the arguments of opposing counsel. See, e. g.: Salzmann v. Bond, 274 Ala. 358, 148 So.2d 640 (1963); Southern Ry. Co. v. Jarvis, 266 Ala. 440, 97 So.2d 549 (1957); Chapman v. Alton R. Co., C.C.A. 7, 117 F.2d 669 (1941). In the absence from the record of the argument of the defendants' counsel, we cannot say that the rebuttal argument made by his opposing counsel is unfair or unjustified by the preceding argument so as to constitute prejudicial error. See, e. g., Haigler v. Logan Motor Co., D.C.Mun.App., 86 A.2d 108 (1962), also 88 C.J.S. Trial § 194.
As the decisions cited above illustrate, counsel have great latitute in argument before a jury, subject however to regulation and control by the court whose duty it is to confine argument within proper bounds, 88 C.J.S. Trial § 169; and upon appeal, unless the contrary is clearly shown, rulings of the trial court with regard to allegedly prejudicially improper argument and conduct of counsel are presumed to have been within its discretion in the matter, 5 C.J.S. Appeal and Error § 1554, at 1129-1130. By these standards, the appellants have not shown that the trial court erred in refusing to set aside the jury verdict and to grant a new trial because of alleged improprieties in the plaintiffs' opening or rebuttal arguments.
4. Answer to the appeal by the plaintiffs-appellees.
By answer to the appeal, the plaintiffs-appellees principally contend:
(1) That by the Seventh and Fourteenth Amendments to the United States Constitution, this appellate court is prohibited from independent re-evaluation of the factual findings of the jury. The contention that appellate review of facts in Louisiana is an infringement of a right to trial by jury was rejected by us in Fontenot v. Marquette Casualty Co., La. App. 3 Cir., 161 So.2d 467, followed in Dore v. Hartford Accident & Indemnity Co., La.App. 3 Cir., 180 So.2d 434. We find no reason to change the conclusions we there reached.
(2) That the trial court committed error in refusing to permit the jury to view a sound movie film made at the time a deposition was taken. The deposition was taken with full compliance with the formalities required by LSA-C.C.P. Art. 1453.
The general rule is that the presentation of evidence through properly authenticated motion pictures is permissible within the large discretion of the trial court. Carvell v. Winn, La.App. 3 Cir., 154 So.2d 788 and authorities therein cited; 3 Wigmore on Evidence, Section 798 (3rd ed., 1940). Appellees, conceding that the *772 deposition must be in writing and transcribed under oath as prescribed by law, insist that the trial presentation of a deposition through accurate motion pictures (as it is conceded the present is) should be as allowable as having the deposition read to the jury by the court reporter (as the present was) or by counsel as is sometimes done.
We do not find it necessary to express any views as to this contention: The appellees are unable to show any prejudice from having the deposition read instead of depicted to the jury, or that any discretion of the trial judge in the matter was abused. The decision[6] cited by appellees does not support their contention that they are constitutionally entitled to have the trier of fact receive the deposition through the demeanor testimony of the motion picture rather than through the undramatic reading of the court reporter.
5. Mr. Luquette's recovery.
The jury awarded the plaintiff husband the sum of $1,000. However, it was stipulated that the cost of repairing the damages to the Luquette 1958 Ford was $407.43, Tr. 678, and that "in addition" the medical expenses incurred to date for treatment of Mrs. Luquette were $1,636.11. The plaintiff Mr. Luquette as head and master of the community is entitled to recover such damages in total amount of $2,043.54, and the judgment will be amended to increase the award in his favor to such amount.
Decree.
For the foregoing reasons, the judgment is amended so as to decrease the award in favor of the plaintiff Mrs. Luquette from $25,000 down to Fifteen Thousand and No/100 ($15,000.00) Dollars and so to increase the award in favor of the plaintiff Mr. Luquette from $1,000 up to Two Thousand Forty-Three and 54/100 ($2,043.54) Dollars, together with legal interest upon such amounts from date of judicial demand until paid. As thus amended, the judgment is affirmed in all other respects. The defendants-appellants are to pay the costs of this appeal.
Amended and affirmed.
HOOD, Judge (concurring in part, dissenting in part).
I concur with the conclusions reached by the majority that defendant Bouillion's negligence was the sole, proximate cause of the accident, that the award made to Mrs. Luquette is excessive and that the award made to Mr. Luquette should be increased from $1000.00 to $2043.54.
I am unable to agree with my conscientious brothers, however, in their conclusion that Mrs. Luquette is entitled to an award of $15,000.00 for the injuries which she sustained. The evidence indicates to me that her injuries were not as serious as the majority found them to be. In my opinion, the award made to her by the majority is excessive and is out of proportion to awards made in other cases for similar injuries. For this reason, I respectfully dissent from that portion of the decree which awards Mrs. Luquette the sum of $15,000.00.

On Application for Rehearing.
En Banc. Rehearing denied.
HOOD, J., is of the opinion that a rehearing should be granted.
NOTES
[1] The term "whiplash injury" is "descriptive of the mechanism causing the injury and is not the pathological term. The injury is sustained as the result of a sudden unanticipated flexion and then hyperextension of the neck. A whiplash injury may result in several types of pathological findings, such as sprain, fracture, dislocation and so forth", Bartholomaus v. H. G. Hill Stores, Inc., La. App.Orl., 97 So.2d 82, 87.
[2] A strain is a stretching of a ligamentous structure.
[3] A sprain is a tearing of a ligamentous structure.
[4] See dissenting opinions in Rusk v. Allstate Ins. Co., La.App., 167 So.2d 205, 206, Winfree v. Consolidated Underwriters, La.App., 163 So.2d 377, 164 So. 2d 183, Craft v. National Indemnity Co., La.App., 159 So.2d 770, 771, and Ballard v. National Indemnity Co., La.App., 159 So.2d 763-765.
[5] See Supreme Court opinions reviewing intermediate decisions in Footnote 4: Ballard and Craft, 246 La. 963, 169 So. 2d 64, Winfree, 246 La. 981, 169 So.2d 71, and Rusk, 246 La. 878, 168 So.2d 104.
[6] S. Buchsbaum & Co. v. Federal Trade Commission, C.C.A. 7, 153 F.2d 85 (1946), error waived and case remanded, 328 U.S. 818, 66 S.Ct. 1016, 90 L.Ed. 1600 (1946).