SAVOY, Judge.
This is a suit for damages arising from an automobile accident. This action has been dismissed as to all but one of the original defendants. All parties acquiesce therein. Additionally, the one remaining defendant, Hartford Accident & Indemnity Company, the appellant herein, concedes its liability to plaintiff, which reduces this appeal solely to the question of quantum.
The case was tried by a jury in the lower court, and a verdict of $10,000.00 was returned for plaintiff. From that verdict Hartford has' appealed. Plaintiff has answered the appeal, seeking certain increases.
The accident in question occurred on November 30, 1963. One automobile struck the rear of a preceding truck, apparently causing the truck to leave its lane of travel and enter the lane occupied by plaintiff, who was traveling in the opposite direction. The truck struck or was struck by plaintiff’s automobile, overturned and came to rest on the hood of plaintiff’s automobile. As a result, plaintiff sustained a whiplash-type injury of the neck.
The record contains the testimony of five different physicians who treated or examined plaintiff.
Dr. Jack H. Gani, a general practitioner, was plaintiff’s treating physician. He first saw plaintiff on December 2, 1963. Plain *316 tiff was complaining generally of neck pain and headaches, and on later examinations he also complained of ringing in the ears and blurred vision. Dr. Gani prescribed medications for plaintiff and treated him conservatively at periodic intervals until September 1, 1964. At that time, plaintiffs complaints remained substantially the same, and Dr. Gani discharged him, feeling that no further treatment he could give him would be beneficial. He did not feel that plaintiff would improve, and that he would experience periodic episodes of remission and exacerbation.
Dr. Blaise Salatich, an orthopedic surgeon, examined plaintiff on May 21, 1964. He felt at that time that plaintiff had a moderate cervical syndrome. He noted an obvious loss of expected range of motion of the head and neck and definite localized tenderness over the joints of the mid-cervical vertebrae, primarily on the left side. X7rays taken at the time demonstrated what the doctor described as a slight narrowing between the fourth and fifth cervical vertebrae, and a minimal hyper-trophic spurring of the third, fourth and fifth cervical vertebrae. He felt that the significance of the X-rays was that the narrowing of the inner space demonstrated some abnormality of relationship of that specific intervertebral disc. Dr. Salatich next saw the plaintiff on March 22, 1965. At that time he found that plaintiff’s complaints were substantially the same and also the doctor’s clinical findings were essentially the same as at the time of the first examination. He did, however, take additional X-rays and felt that at the time of the second examination, the X-rays demonstrated a slight “S” curve of the cervical spine, which the doctor described as very abnormal. He next examined plaintiff on October 26, 1965. He found at that time that plaintiff’s ability to grip and grasp had deteriorated to some appreciable extent. He also noted in additional X-rays taken at the time that there was a shifting over or subluxation of the second cervical vertebra on the first. He felt that plaintiff was unable to demonstrate much forward or backward motion of the neck. He also felt that there had been an increase in the “S” curve he had previously noted. The doctor’s overall conclusion at the time of this last examination was that the passage of time was beginning to paint a picture indicating that plaintiff’s condition was-becoming chronic and static, and it appeared that it was becoming more unfavorable with the passage of time.
Dr. Ruth Jackson, an orthopedic surgeon, examined plaintiff on December 7, 1964. At the time of this examination the doctor noted a limitation of motion in plaintiff’s neck, and also that the ligament at the back of the neck became very taut and stood out prominently during flexion movements. She felt that this indicated some involvement of the ligament itself, in her opinion, a scarring within the ligament. The doctor also noted that in putting the plaintiff through the various tests of her. examination that these tests increased plaintiff’s -pain. There was also muscle spasm noted at the sides of the neck and above the right shoulder blade, and also there was some tenderness over the spinous process of the second cervical vertebra. She also felt there was some decrease in the gripping power of plaintiff’s left hand as compared to his right, although there should be some difference with a right-handed person, but she felt the difference was more than it should be. She further found that the blood pressure in plaintiff’s right arm was. significantly higher than that in the left,, indicating to her an irritation of the sympathetic nerve supply in the neck. X-rays were also taken by Dr. Jackson, and she noted certain abnormalities therein which we will not attempt to detail here. It was. her opinion that plaintiff had sustained a. sprain injury of the ligaments and capsules, which hold the bones together in the cervical spine, that he also had evidence of nerve root irritation at the back of the neck and evidence of irritation of the sympathetic nerve supply in the neck; additionally, a compressive-type injury to the fifth *317 cervical vertebra and of the upward lip of the sixth vertebra on the left side. Without attempting to indulge in a minutely detailed explanation of the doctor’s testimony, suffice it to say that her overall conclusion was that plaintiff could look forward to continued symptoms referable to his neck; that they would be better at times and worse at times, and that he would have a permanent condition, varying in severity, with regard to his overall complaints of headaches, neck pain, nervousness, inefficiency of gripping ability and blurring of vision.- Dr. Jackson next examined plaintiff on October 27, 1965. At that time she still felt that plaintiff’s problems would continue as previously described, depending on his activities and how well he was able to protect his neck in his every day activities.
Dr. Fred C. Webre, an orthopedic sur«geon, examined plaintiff on January 6, 1964. Here, we believe the doctor’s overall conclusions will suffice for the purposes of this decision. He felt plaintiff had probably sustained a minor sprain of his neck, but that he had nothing serious and no indication of any permanent injury.
Dr. Joseph M. Eddleman, a neurosurgeon, examined plaintiff on December 10, 1964, and again on November 2, 1965. Again, digesting the overall conclusions, Dr. Eddle-man felt on both examinations that plaintiff sustained a comparatively trivial injury in spite of his multiple complaints. He could find no evidence of disability or injury to the central nervous system, spinal cord or nerve roots or to the spinal cord.
The record further reveals that plaintiff was never hospitalized, did not wear a brace of any kind, had no special therapy and suffered no loss of earnings through the time of trial.
The rationale behind the appellate review of general damages, with particular regard to whiplash-type injuries, is set forth in detail in the case of Luquette v. Bouillion, (La.App., 3 Cir., 1966), 184 So.2d 766.
In applying that rationale to the instant case, it is to be noted, we feel, that the medical testimony is certainly not conclusive in plaintiff’s favor. However, we are not unmindful that two of the doctors, particularly Dr. Jackson, felt that plaintiff demonstrated definite findings of some disability. In a general sense, however, it does not appear that plaintiff’s physical activities have been greatly curtailed as a result of the accident. Looking at the situation as a whole, it is our opinion that plaintiff’s injury should be classified as moderate with the probability of experiencing some residual difficulty from time to time. It does not appear to us that the evidence elicited in the instant case warrants an award of $10,000.00, particularly when compared to the Luquette case, supra, and other cases therein cited. Rather, it is our opinion that the award to plaintiff in the instant case is excessive, and should be reduced to $5,-500.00.
In plaintiff’s answer to this appeal, he questioned the lower court’s ruling in excluding certain evidence relating to special damages, and further asserts that defendant-appellant should be assessed with penalties as for a frivolous appeal.
 With regard to the latter contention, this Court sees nothing frivolous in the appeal, and the claim for penalties is therefore rejected. With regard to the special damages, an examination of the record reveals that plaintiff’s attempt at establishing certain expenses incurred were somewhat sketchy and unclear. There was no prior agreement or stipulation between counsel regarding the informal presentation of the items without regard to the usual rules of evidence. Upon objections being made, the lower court refused to admit certain offerings without further substantiation beyond plaintiff’s own testimony. While it is not our intention to be unduly technical, we cannot say that the lower court’s ruling was incorrect, and accordingly, the plaintiff’s claims in this regard are likewise rejected.
*318 For the reasons assigned, the judgment of the district court is amended so as to decrease the award in favor of plaintiff from $10,000.00 to $5,500.00, and as thus amended, the judgment is affirmed.
The defendant-appellant is to pay the costs of this appeal.
Amended ’and affirmed.
On Application for Rehearing.
En Banc. Rehearing denied.