604 So.2d 1014 (1992)
Mr. and Mrs. Bobby R. MARTIN, Plaintiffs-Appellants,
v.
G & A LIMITED, I, A Limited Partnership (Co. I, Rigs I & II); Aban/Loyd/Chiles, a Joint Venture; Chiles-Alexander Offshore, Inc., Griffen-Alexander Drilling Co.; National Union Assurance Co. (AIG); National Union Fire Insurance Co. & Underwriters at Lloyd's London; [G & A Contract Services, Inc., William E. Chiles, Paul Loyd, the United Kingdom Mutual Steam Ship Assurance Association (Bermuda), Limited (First Amd. Pet. Filed on Behalf of Plaintiff 8-10-88) ], Defendants-Appellees.
No. 91-170.
Court of Appeal of Louisiana, Third Circuit.
June 24, 1992.
As Amended on Application for Rehearing August 13, 1992.
Writ Denied November 20, 1992.
*1015 Uhalt & Rack, Gothard J. Reck, New Orleans, for plaintiffs-appellants.
Preis, Kraft & Daigle, Edwin Preis and D.C. Panagiotis, Lafayette, for plaintiff-appellee G & A Ltd.
Rice, Fowler, Kingsmill, Vance, Flint & Booth, Winston Rice, New Orleans, for plaintiff-appellee Nat. Union Fire Ins. Co. & Underwriters at Lloyd's London.
Before DOMENGEAUX, C.J., DOUCET, J., and PATIN[*], J. Pro Tem.
DOUCET, Judge.
In this case, the trial judge granted a judgment notwithstanding the verdict modifying the jury's award of damages to an injured toolpusher.
For about seven years, the plaintiff, Bobby R. Martin, was employed as a toolpusher *1016 by Griffin-Alexander Drilling Co. (Griffin). In April 1987, Chiles-Alexander (Chiles) bought the assets of Griffin. At about the same time as the buy-out, Martin's employment was terminated. It is not clear whether he was employed by Griffin or Chiles at the time of the termination.
Aban/Loyd/Chiles Offshore Ltd. (ALCO) acquired two offshore drilling rigs, G & A II and III, from Griffin. The rigs were loaded on the M/V Transhelf, a merchant vessel of Russian registry, and shipped to India. Martin was rehired by Chiles to go to India to supervise the unloading process and train crews to run the rigs. Martin was initially to work a three-month tour then alternate 28 day tours working in India with 28 days off in the U.S. Martin traveled to India in company with another toolpusher and two rig movers. Two British drilling crews of 7 men each were also expected to help in the offloading process.
They arrived in India in the morning after about 36 hours of travel. They checked into a hotel, rested for several hours, and met with representatives of Chiles and ALCO. At the meeting, they learned that the British crews had not arrived and that they would be expected to offload the rigs with only unskilled Indian labor to help. Weather conditions were worsening. At least one of the men complained to the company representatives about working under those conditions.
The next day, October 2, 1987, the four Americans took a six to eight hour ride in a supply boat to the Russian vessel, arriving in the late afternoon. They began offloading supplies from the supply boat. The normal rig walkways were partially or totally blocked by drilling equipment and supplies loaded on the rig for transport to India.
The four men, although hired for supervisory positions, were required to participate in the manual labor of the offloading process. Martin operated a crane for several hours. Between 7 and 8 p.m., weather conditions worsened. At this time, Martin was looking over a railing on Rig II, checking to be sure that the Indian laborers were setting up welding equipment properly. A severe storm came up suddenly with heavy rain, lightning, and 30-40 mph winds possibly gusting up to 60 miles per hour. Trying to quickly reach shelter in the living quarters on Rig II, Martin ran or rapidly walked across a pipe rack which was loaded with drill pipe and collars. He caught his foot on the collars, tripped, and fell. He immediately began experiencing severe stomach pain.
There was no medical personnel aboard the rigs. The next day, Martin was given injections of an unknown nature by someone from the Russian ship who spoke no English, but was said to be a doctor. ALCO representatives were asked for help but none was rendered. About three days later, Martin was finally evacuated when an Indian TV crew came to film operations and gave him a ride into shore. There, the Indian TV crew made arrangements for Martin to return to the U.S. where he finally received treatment for his injuries.
He underwent immediate surgery to repair an umbilical hernia. Later, he underwent further surgery in the form of a lumbar laminectomy. Chiles paid his salary for six months. Afterwards, Chiles paid maintenance of $25.00 per day. Martin's medical bills were also paid by Chiles.
Back in India, the rig offloading process was delayed for two weeks due to bad weather, at the end of which time the British crews arrived.
Mr. and Mrs. Martin filed suit against Griffin, Chiles and ALCO alleging claims for negligence under the Jones Act and for negligence, unseaworthiness, loss of consortium, and for punitive damages for delay of medical treatment under the general maritime law. After a ten day trial, the jury returned a verdict, finding that:
1) Bobby Martin was a Jones Act seaman;
2) Chiles and ALCO were the Jones Act employers of Martin, and that their negligence was a substantial cause of Martin's injuries;
3) Griffin was negligent under the general maritime law and that the negligence *1017 was a substantial cause of Martin's injuries;
4) Martin was comparatively negligent; and
5) That the Jones Act employers arbitrarily delayed necessary medical treatment.
The jury apportioned 40% of the fault to Martin and 20% each to Chiles, Griffin and ALCO.
Damages were awarded as follows:

1) Past, present and future pain and suffering $100,000.00
2) Permanent Disability 200,000.00
3) Future medical 200,000.00
4) Past lost wages 70,000.00
5) Loss of future earning capacity 200,000.00
6) Damages for delay of treatment 120,000.00
7) Loss of consortium to Susan Martin 50,000.00

Judgment was entered reflecting the jury verdict plus pre-judgment interest of $37,740.00.
The defendants filed motions for judgment notwithstanding the verdict, new trial, and/or remittitur. The Martins moved to modify the judgment to include pre-judgment interest on the awards for pre-judgment damages, loss of consortium, and punitive damages. The trial court denied the Martin's motion but granted a JNOV modifying the jury awards as follows:
1) Permanent disability was reduced to $100,000.00;
2) Loss of consortium was reduced to $30,000.00; and
3) Damages for future medical and delay of treatment were eliminated.
The Martins appeal, essentially arguing that the defendants' motion for JNOV should not have been granted. The defendants answered the appeal arguing that the trial court did not go far enough in modifying the jury award. They argue that the trial judge should have found that Martin was not a Jones Act seaman, that Martin was entirely at fault for his own injuries, and that Martin's hernia was not related to the accident. Defendants further argue that no prejudgment interest should have been awarded. Alternatively, defendants argue that they are entitled to a new trial because of prejudicial remarks made by plaintiff's counsel during closing arguments.
A trial court may grant a JNOV only when the evidence points so strongly and overwhelmingly in favor of the moving party that reasonable men could not reach a contrary verdict. If there is substantial evidence opposed to the motion: i.e. evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions, the motion must be denied. Scott v. Hosp. Serv. Dist. No. 1, 496 So.2d 270 (La.1986). In considering a motion for JNOV, the trial court must construe all evidence and reasonable inferences to be made therefrom in favor of the party opposing the motion. Trans Global Alloy v. First Nat. Bank, 564 So.2d 697 (La.App. 5th Cir.1990); Zeagler v. Dillard Dept. Stores, Inc., 521 So.2d 766 (La.App. 2d Cir.1988). Further, the trial court may not weigh the evidence, pass on credibility of witnesses or substitute its own judgment for that of the jury. Wooten v. Louisiana Power & Light Co., 477 So.2d 1142 (La.App. 1st Cir. 1985). Basically, a JNOV can be granted by a trial court only when a jury's verdict is one which reasonable men could not have rendered. Adams v. Security Ins. Co. of Hartford, 543 So.2d 480 (La. 1989). The standard to be applied by appellate courts in reviewing the grant of a JNOV is whether the trial court's findings in rendering the JNOV were *1018 manifestly erroneous. Stafford v. Unsell, 492 So.2d 94 (La.App.1st Cir.1986).
Hutchinson v. Wal-Mart, Inc., 573 So.2d 1148, 1151 (La.App. 1st Cir.1990). See also Barnes v. Thames, 578 So.2d 1155 (La.App. 1st Cir.1991), writ denied, 577 So.2d 1009 (La.1991).

SEAMAN STATUS
The first issue which must be dealt with is whether the jury was correct in finding Martin to be a Jones Act seaman.
The court in Wilkerson v. Teledyne Movible Offshore, Inc., 496 F.Supp. 1279, 1282-1283 (E.D.Tex.1980) stated that:
Only seamen are entitled to the liberal provisions of the Jones Act.5 Stokes v. B.T. Oilfield Services, Inc., 617 F.2d 1205, 1206 (5th Cir.1980); Wixom v. Boland Marine & Manufacturing Co., Inc., 614 F.2d 956, 957 (5th Cir.1980); Guidry v. South Louisiana Contractors, Inc., 614 F.2d 447, 452 (5th Cir. 1980); Longmire v. Sea Drilling Corp., 610 F.2d 1342, 1345 (5th Cir.1980). The Fifth Circuit has defined "seaman" as one who
(1) [has] a more or less permanent connection with (2) a vessel in navigation and (3) the capacity in which he is employed or the duties which he performs must contribute to the function of the vessel, the accomplishment of its mission or its operation or welfare in terms of its maintenance during its movement or during anchorage for its future trips.

Guidry, 614 F.2d at 452; Billings v. Chevron, U.S.A., Inc., 618 F.2d 1108, 1109 (5th Cir.1980); Wixom, 614 F.2d at 957; Beard v. Shell Oil Co., 606 F.2d 515, 517 (5th Cir.1979); Barrios v. Louisiana Construction Materials Co., 465 F.2d 1157, 1161 (5th Cir.1972); Offshore Co. v. Robison, 266 F.2d 769, 779 (5th Cir.1959).
* * * * * *
The Fifth Circuit has held in a long line of cases beginning with Offshore Co. v. Robison, 266 F.2d 769 (5th Cir.1959), that workers aboard movible drilling rigs are seamen for purposes of the Jones Act and general maritime law. See, e.g., Longmire, 610 F.2d at 1348; Higginbotham v. Mobil Oil Corp., 545 F.2d 422, 432 (5th Cir.1977), rev'd on other grounds, 436 U.S. 618, 98 S.Ct. 2010, 56 L.Ed.2d 581 (1978); Vincent v. Harvey Well Service, 441 F.2d 146, 150 (5th Cir.1971); Boatel, Inc. v. Delamore, 379 F.2d 850, 858-59 (5th Cir.1967); Producers Drilling Co. v. Gray, 361 F.2d 432, 437 (5th Cir.1966); G. Gilmore & C. Black, The Law of Admiralty, §§ 6-7, 6-21 (2d ed. 1975); 2 M. Norris, The Law of Seamen, § 669 at 306-07 (3d ed. 1970 & Supp.1979).
(footnote omitted.)
This court finds that the record contains sufficient facts to conclude that Martin had a permanent connection with the rigs and that his work contributed to the function of the vessel. Therefore, he was correctly found to be a seaman.

PLAINTIFF'S NEGLIGENCE
Defendant appellees argue that the trial court should have totally disallowed any recovery by rendering JNOV finding Martin to be 100% at fault for his injury.
It is undisputed that the plaintiff's negligence contributed to the accident. The question here is whether the defendant's conduct was also a contributory factor.
As Professors Gilmore and Black put it, "the shipowner's duty [under the Jones Act] may be higher than that of the shore employer and the quantum of negligence needed to establish his liability less." G. Gilmore & C. Black, The Law of Admiralty, § 6-35 at 376-77 (2d ed. 1975). Seamen are wards of the admiralty. Socony-Vacuum Oil Co. v. Smith, 305 U.S. 424, 431, 59 S.Ct. 262, 266, 83 L.Ed. 265 (1939); Calmar Steamship Corp. v. Taylor, 303 U.S. 525, 528, 58 S.Ct. 651, 653, 82 L.Ed. 993 (1938); Reyes v. Vantage Steamship Co., Inc., 609 F.2d 140, 142 (5th Cir.1980); 2 M. Norris, The Law of Seamen, § 576 at 97-98 (3d ed. 1970 & Supp.1979). It has been said that the shipowner owes the seaman an "obligation of fostering protection." Cortes v. Baltimore Insular *1019 Line, 287 U.S. 367, 377, 53 S.Ct. 173, 176, 77 L.Ed. 368 (1932) (per Cardozo, J.). The law in this circuit has developed to the point that the employer's negligence need only be slight, and merely a contributing cause of the Plaintiff's injuries. Reyes, 609 F.2d at 146; Davis v. Hill Engineering, Inc., 549 F.2d 314, 329 (5th Cir.1977); Sanford Brothers Boats, Inc. v. Vidrine, 412 F.2d 958, 966 (5th Cir. 1969); Offshore Co. v. Robison, 266 F.2d 769, 780 (5th Cir.1959).
Wilkerson, supra, at p. 1284.
The jury found that, while Martin was negligent, the defendants were also negligent in failing to provide safe working conditions. There is ample evidence to support the jury's determination that the negligence of the defendants contributed to the accident. There was testimony that the rigs were loaded in such a manner that ingress and egress were blocked. Further, there was testimony that the offloading process should not have been begun in view of the unfavorable weather conditions and the absence of skilled labor. In fact, it was established that after the accident, the offloading was postponed for two weeks until weather conditions improved and the British crews arrived.
Accordingly, we find no error in the jury's determination that the defendants' negligence was a cause-in-fact of the injury to Martin, or their allocation of fault therefor.

HERNIA DAMAGES
The defendants argue that JNOV should have been granted eliminating that portion of the award attributable to the hernia. In support of this position, the defendants cite the testimony of Dr. Ray Boyer, a general practitioner who did a pre-employment physical on Martin prior to the accident. He stated that umbilical hernias are congenital and do not usually become symptomatic as a result of trauma. However, he did not check Martin for an umbilical hernia at the pre-employment physical. As a result, he could not say whether one was present at that time.
In a personal injury suit the test for determining the causal relationship between the accident and subsequent injuries is whether the plaintiff proved through medical testimony that it was more probable than not that subsequent injuries were caused by trauma suffered in the accident. Mart v. Hill, 505 So.2d 1120 (La.1987), on remand, 513 So.2d 1235 (La.App. 4 Cir.1987), writ den., 515 So.2d 1108 (La.1987); Aucoin v. State Farm Mut. Auto. Ins. Co., 505 So.2d 993 (La.App. 3 Cir.1987). A plaintiff is aided in establishing this burden by the legal presumption that a medical condition producing disability is presumed to have resulted from an accident if, before the accident, the injured person was in good health, but shortly after the accident, the disabling condition manifested itself. Heath v. Northgate Mall, Inc., 398 So.2d 132 (La.App. 3 Cir.1981); Boykin v. Washington, 401 So.2d 488 (La.App. 2 Cir.1981).
If such a showing is made, the burden is upon a defendant who contests the cause-in-fact relationship to show some other particular incident could have caused the injury in question to overcome plaintiff's case. Davis v. Galilee Baptist Church, 486 So.2d 1021 (La.App. 2 Cir.1986); Miller v. Allstate Insurance Company, 221 So.2d 908 (La.App. 1 Cir. 1969).
Streeter v. Sears, Roebuck and Co., Inc., 533 So.2d 54 (La.App. 3rd Cir.1988), writ denied, 536 So.2d 1255 (La.1989).
The testimony at trial established that prior to the accident, Martin was in good health and free of hernia-related symptoms. Immediately after the accident, he experienced severe abdominal pain. Upon medical examination, he was found to have an umbilical hernia. Surgery was performed to repair the hernia. At that point, the abdominal pain ceased. By this testimony, plaintiff successfully established a causal connection between the accident and the hernia.
The defendants, on the other hand, failed to show any other cause for the injury. The testimony of Dr. Boyer established *1020 only that umbilical hernias do not usually become symptomatic in this fashion. As a result, hernia-related damages were correctly awarded.

PRE-JUDGMENT INTEREST
By amended answer to appeal, the defendants raise the issue of the propriety of the trial judge's award of pre-judgment interest. La.C.C.P. Art. 2133 states that the answer to an appeal must be filed "not later than fifteen days after the return day or lodging of the record whichever is later."
The record in this matter was lodged on February 22, 1991. The amended answer to the appeal was not filed until May 22, 1991. As this court stated in Landry v. Nobility Homes, Inc., 488 So.2d 726, 728 (La.App. 3rd Cir.1986), writ denied, 491 So.2d 21 (La.1986):
We believe the plain wording of CCP 2133 requires the appellee's answer, which is equivalent to an appeal on his part, to be filed not later than fifteen (15) days after the return date or the lodging of the record, whichever is later. No provision is made for a later filing of an amended answer. There being no statutory authority permitting an appellee to seek relief by appeal beyond the fifteen (15) day period, the motion to dismiss must be granted. We note that appellee suffers no prejudice by being required to timely file his answer, as well as any amendments thereto, within the fifteen (15) day period, since ample time has elapsed since the rendition of judgment and the lodging of the appeal for him to decide what relief, modification or revision that he wishes in the judgment.
We hold that no answer or amended answer to an appeal, demanding relief, will be permitted and considered, if filed more than fifteen (15) days after the return date or the lodging of the record, whichever is later.
Accordingly, we will not consider the propriety of the award of prejudgment interest.

CLOSING ARGUMENTS
Finally, the defendants argue that they are entitled to a new trial because of improper remarks made by counsel for plaintiffs during closing arguments. Defendants made a contemporaneous objection to the remarks, which the trial judge sustained. The defendant then asked that the jury be directed to disregard the remarks, and the trial judge so ordered.
In Bourque v. Gulf Marine Transp., Inc., 480 So.2d 337, 342 (La.App. 3rd Cir. 1985), this court summarized the law governing argument before a civil jury.
The propriety of argument in a civil jury trial must be determined in the factual light of the particular matter, the conduct and atmosphere of that particular trial and the arguments of opposing counsel. Luquette v. Bouillion, 184 So.2d 766 (La.App.3rd Cir.1966). Great latitude is permitted in argument before a civil jury, subject to regulation by the trial court whose duty is to confine argument within proper bounds. Temple v. Liberty Mutual Insurance Company, 316 So.2d 783 (La.App. 1st Cir.1975), reversed on other grounds, 330 So.2d 891 (La.1976); Luquette, supra. Unless the contrary is shown, the trial court's rulings regarding alleged improper argument are presumed to have been made within the trial court's discretion. Luquette, supra.
See also Streeter, supra.
Although the statements made by plaintiffs' counsel were improper, we are of the opinion that a new trial is not warranted. The judge instructed the jury to disregard the objectionable statements. We find the trial court's corrective action to be both within its discretion and sufficient to correct any possible prejudicial effect of the statement. Accordingly, the trial court correctly denied a new trial.

DELAY OF TREATMENT
The plaintiffs argue that the trial judge erred in eliminating the jury's award for damages for delay of treatment.
The duty to provide maintenance and cure embraces not only the obligation to *1021 provide a subsistence allowance and to pay for medical expenses actually incurred by the seaman, but to take all reasonable steps to ensure that the seaman, when he is injured or becomes ill, receives proper care and treatment. See generally 2 Norris, The Law of Seaman (3rd ed. 1970 & Supp.) § 583 et seq., and cases cited therein.
Gaspard v. Taylor Diving & Salvage Co., Inc., 649 F.2d 372 (C.A.5 1981).
Failure to give maintenance and cure may give rise to a claim for damages for the suffering, for the physical handicap, which follows, and reasonable attorney fees may be allowed where required to obtain recovery from a callous, recalcitrant vessel owner, Vaughan v. Atkinson, 369 U.S. 527, 82 S.Ct. 997, 8 L.Ed.2d 88 (1962).
Blanchard v. Cheramie, 485 F.2d 328 (C.A.5 1973).
There is more than sufficient evidence of record to support the jury's conclusion that the defendants failed to take all reasonable steps to ensure that Martin received proper care and treatment. Little or no medical care was available aboard the vessel. The defendants did nothing in response to pleas for help by the crew. Nor did they attempt to get Martin to shore for help or to repatriate him for treatment. Further, the record supports a conclusion that Martin suffered severe pain as a result of this failure. Therefore, we cannot say that the decision to award damages for delay of medical treatment was one which reasonable men could not reach. Accordingly, the trial court erred in eliminating this award.

LOSS OF CONSORTIUM
The defendants contend that Mrs. Martin is not entitled to an award of damages for loss of consortium. The U.S. Fifth Circuit Court of Appeal has dealt with this issue in two recent cases. Michel v. Total Transportation, Inc., 957 F.2d 186 (C.A.5 1992), and Murray v. Anthony J. Bertucci Const. Co., Inc., 958 F.2d 127 (C.A.5 1992). In those cases the court held that the damages recoverable in general maritime causes of action for personal injury of a Jones Act seaman do not include loss of consortium. Accordingly, the award of damages for consortium must be reversed.

QUANTUM OF DAMAGES
Plaintiffs argue that the JNOV was in error insofar as it reduced the awards for permanent disability and consortium. The award for permanent disability was reduced from $200,000 to $100,000. The court reduced the jury's award for Mrs. Martin's loss of consortium from $50,000 to $30,000.
A judgment notwithstanding the verdict is a procedurally correct device for raising or lowering an unreasonable damage award. La.C.C.P. art. 1811(F); Lilly v. Allstate Insurance Co., 577 So.2d 80 (La. App. 1st Cir.1991), writ denied, 578 So.2d 914 (La.1991).
Once a trial court has concluded that a JNOV is warranted because reasonable men could not differ on the fact that the award was either abusively high or abusively low, it must then determine what is the proper amount of damages to be awarded. In making this determination, the judge is not constrained as the courts of appeal are to raising (or lowering) the award to the lowest (or highest) point which is reasonably within the discretion afforded that court. Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976). We are aware of some decisions which indicate that the trial judge should be limited by that constraint. See West v. Melancon, 507 So.2d 1250 (La.App. 4th Cir.1987), Barfield v. Jacobs, 527 So.2d 555 (La.App.3d Cir.1988), Zeagler v. Dillard Department Stores, Inc., 521 So.2d 766 (La.App.2d Cir.1988). However, we conclude that the better view is that expressed in Rickerson v. Fireman's Fund Insurance Company, 543 So.2d 519, 523 (La.App. 1st Cir.1989), where the court stated:
"The Coco standard of review does not apply to a trial court's review of a jury's award. Therefore, after rendering the JNOV, the trial court should have rendered a de novo award based on his independent assessment of injuries and damages."

*1022 The trial judge is in a better position to make a damage assessment than is an appellate court. The trial judge hears the testimony, views the evidence, and is able to evaluate the credibility of the witnesses. Once the jury verdict is set aside under the strict JNOV standards, the trial court is then the trier of fact. It should not be limited by the same constraints placed upon an appellate court reviewing a damage award. The trial judge should make an independent assessment of the damages and award a proper amount of compensation under the facts of the particular case.
The appellate court, in determining whether the trial court erred in granting the JNOV as to quantum, once again uses the criteria set forth in Scott, supra, i.e., could reasonable men in the exercise of impartial judgment differ as to the fact that the jury award was either abusively high or abusively low. If the answer is in the affirmative, then the trial court erred in granting the JNOV, and the jury's damage award should be reinstated. On the other hand, if the answer is in the negative, then the trial court properly granted the JNOV, and its damage award based on its independent assessment of the damages is the judgment of the trial court which is reviewed on appeal under the constraints of Coco, supra.

Anderson v. New Orleans Public Service, 583 So.2d 829, 833-834 (La.1991).
Our review of the record convinces us that the amount awarded by the jury for permanent disability was excessive. Therefore, the trial court properly granted the JNOV on these points.
A trial court, in making a general damage award, should base its decision on articulated facts and circumstances present in the case before it rather than on awards in similar cases. A trial judge is not constrained by prior awards to set the amount of damages at some predetermined amount.
Anderson, supra, at 834.
After a review of the evidence in this case we conclude that the trial judge correctly set the award for permanent disability. Accordingly, the JNOV is affirmed as to this award.

FUTURE MEDICALS
The plaintiff argues that the trial judge erred in granting JNOV eliminating the award for future medicals. However, the record is devoid of evidence establishing the plaintiff's need for future medical treatment. Accordingly, we find no error in the elimination of the jury's award for this item of damages.

CONCLUSION
Accordingly, the JNOV granted by the trial judge is affirmed except that the award for loss of consortium is stricken and the elimination of the award for delay of medical treatment is reversed and judgment is rendered reinstating that portion of the jury's award.
AFFIRMED IN PART; REVERSED IN PART; AND RENDERED.

ON APPLICATION FOR REHEARING BY MR. and MRS. BOBBY R. MARTIN
PER CURIAM.
APPLICATION GRANTED AND MADE PEREMPTORY. Plaintiffs' claim for damages for delay of medical treatment is a separate claim from their other demands. The award therefor is subject to prejudgment interest. Accordingly, our opinion in this matter is amended to reflect that prejudgment interest from date of judicial demand is granted on the award for delay of medical treatment.
NOTES
[*] Honorable John A. Patin, Retired, participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.