HARDY, Judge.
This is an áction ex delicto in which plaintiff seeks recovery of damages in the nature of personal injuries. Plaintiff husband also filed suit for the recovery of medical expenses and loss of earnings. The two suits were consolidated for purposes of trial and appeal. After trial judgments were rendered in favor of plaintiff wife and against the named defendants in the principal sum of $16,000.00, and in favor of the plaintiff husband and against the named defendants in the principal sum of $6,000.00, which judgments provided for the apportionment of the amounts recovered by plaintiffs between the insurance companies named as defendants upon the basis of liability of the respective insurers.
From the judgment in the suit of plaintiff wife both plaintiff and defendants have appealed. In the suit of plaintiff husband the defendants have appealed and plaintiff has answered the appeal, praying for an increase in the amount of the judgment with respect to the claimed damages for loss of earnings, past, present and future, accruing to the community.
The accident which gave rise to this litigation occurred on Highway 1 in Caddo Parish, after dark, on December 1, 1962. At the time northbound traffic was unusually heavy by reason of the fact that a large number of people had attended the Christmas lights ceremony in Natchitoches and were returning to Shreveport. Plaintiff wife was a passenger in a 1962 Ford automobile owned by McClellan Oil Company and operated by her husband, which was traveling north. While in the course of negotiating a left turn, this vehicle was struck from the rear by a 1962 Buick automobile owned by Mrs. Ada Hawthorne and driven by the defendant, Bill M. Sutton. Plaintiff wife named as principal defendants Mrs. Hawthorne, owner of the Buick, Bill Sutton, the driver, and their respective insurers, Employers Mutual Fire Insurance Company and American Insurance Company. By alternative pleadings the plaintiff wife asserted claims against Hardware Mutual Casualty Company, insurer of McClellan Oil Company, and Central Mutual Insurance Company, insurer of her husband. In response to motion for summary judgment, plaintiff’s suit as against Central Mutual was dismissed, and the judgment, after trial on the merits, dismissed plaintiff’s claims as against Hardware Mutual. No issue is made as to the discharge of these named defendants from liability.
The appeal of plaintiff wife complains of error on the part of the trial court in failing to allow an expert witness fee on behalf of Robert L. Trewatha, who was tendered as an expert statistician and testified as a witness for plaintiff, and further error in the award of damages by reason of failure to take into consideration the alleged permanent impairment of the normal physical function of plaintiff’s back, neck and nervous system, which substantially disables her from practicing her profession as a graduate, licensed Registered Nurse, resulting in a loss of earning capacity, and *40 permanent disablement from performance of her duties as a housewife and mother.
We find it necessary to discuss, briefly, the failure to allow expert fees on behalf of Dr. Trewatha in the wife’s suit. The testimony of this witness was primarily concerned with a development of the wife’s loss of earnings, and, therefore, was properly part of the companion case involving the claim of the plaintiff husband in which an expert fee of $50.00 on behalf of Dr. Trewatha was allowed and taxed as costs. No claim is made in the husband’s suit for an increase in the amount of this fee, either by an appeal or answer to defendant’s appeal. It follows that the judgment refusing to allow the expert witness fee in the wife’s suit was correct.
On the second point raised by plaintiff’s appeal, we are of the opinion that the diminution of earning capacity is comprehended in the claim of plaintiff husband for loss of earnings, and, therefore, should not be allowed as an item of damages on behalf of the wife.
After careful examination of the record we have reached the conclusion that the allowance made by the district judge for pain and suffering included consideration of the consequent disability to perform household duties and was adequate for such purposes.
Defendant’s appeal specifies error on the part of the trial court in the findings of negligence on the part of defendant, Sutton; in exonerating plaintiff’s husband from negligence; in imputing the negligence of Sutton as driver to the defendant, Mrs. Hawthorne, as owner, and in granting excessive awards.
It is necessary to recapitulate the facts which we find to have been established and which have a bearing upon the negligence of the drivers of the two cars involved in the accident.
Immediately prior to the occurrence of the collision, a steady stream of vehicular traffic was moving north on Highway 1 toward Shreveport, and there was little traffic proceeding in the opposite southbound direction. The nature of the traffic was described by some of the witnesses as being almost bumper to bumper. Shortly after passing the community of Caspiana, Mathews, driver of the Ford automobile in which his wife was riding as a passenger, began making observation for the T-intersection of what is known as the Ellerbe Road, which enters Highway 1 from the west, and, for this purpose, he substantially slowed the speed of his vehicle to about 30 miles per hour from the speed of 45 or 50 miles per hour at which the long line of cars had been more or less steadily moving. This decrease in the speed of the Mathews car resulted in an increase of the interval which separated it from cars ahead to such a degree as to have permitted properly operated cars to the rear to make a passing movement. Mathews observed what he thought was the intersection of the Ellerbe Road, but which, in fact, was a private driveway leading into Highway 1 from the west and proceeded to give a left turn signal by means of the directional tail-light indicator. According to Mathews’ testimony, he made careful observation both to the front and rear, observed no approaching nor overtaking traffic, and at a speed of some 15 to 20 miles per hour began his left turn, which was almost completed when the left rear fender and bumper of his car was struck by the Buick automobile driven by Sutton. Mathews steadfastly insisted in his testimony that the Buick car was not in the passing lane either when he made observation or when he actually began his left turn operation. The material aspects of Mathews’ testimony were corroborated not only by his wife, who was seated beside him on the front seat, but also by a completely disinterested witness, James W. Lee, driver of the car which was immediately following. The witness, Lee, testified that Mathews slowed his car, gave a left turn blinker light signal, and that upon observing this action he turned his car slightly to the right in order to give following traf *41 fic an opportunity to better observe Mathews’ turn signal, but that as Mathews had almost completed his turn, the Buick car passed Lee’s car at a rapid rate of speed and struck the Mathews vehicle.
Sutton testified that he observed an opportunity to pass the cars ahead of him and gain distance because of the open interval on the east side of the highway ahead of Mathews’ car; that he turned into the passing west lane and was unable to avoid the collision with the Mathews’ car, which turned to the left directly in his path. To some extent this testimony was supported by Mrs. Hawthorne and by two adult passengers, Mr. and Mrs. Gordon Hinton, who were on the back seat.
There are some conflicts in the testimony of the several witnesses with respect to the rate of speed, the number of cars between the vehicles driven by Mathews and Sutton, and the actual circumstances of the attempted passing maneuver being made by Sutton. However, the most startling conflict resulted from the testimony of Sutton, Mrs. Hawthorne, and Mr. and Mrs. Hinton, all of whom testified that the blinker light signal on the Mathews’ car was indicating' a right turn and that this light continued-to blink during the left turn made by Mathews and for a period of minutes after the cars came to a stop following the collision. It is a matter of common knowledge with automobile drivers that a blinking light turn signal is cancelled when the steering wheel is turned in the opposite direction. However, plaintiff did not rely upon this fact as a matter of common knowledge but established it by the uncon-troverted testimony of an expert mechanic who had been employed eleven years as service representative for Ford Motor Company, during nine years of which period he was charged with training Ford mechanics.
The State Trooper who investigated the accident testified that although he had talked with the drivers and passengers, neither Sutton nor any of the other occupants of the Buick car had mentioned the circumstance of the blinking light on the Mathews’ car which indicated a right turn.
We are forced to completely reject the validity of this testimony by the defendants’ witnesses, which, unfortunately, detracts from the weight of other testimony given by these witnesses who were so inexplicably in error on this point.
The testimony of the witness, Lee, who was a stranger to all parties directly involved in the collision, was so clear and so convincing that we have no hesitation in accepting his version of the factual circumstances which conclusively supports and corroborates the testimony of Mathews. It follows that there can be no question as to the correctness of the factual finding of the district judge that the sole and proximate cause of the accident was attributable to the negligence of Sutton in attempting to pass the Mathews automobile after the left turn signal had been given. We have no doubt as to the conclusion that Mathews took every adequate and reasonable precau-, tion, and that he began his left turn before Sutton moved his car into the passing lane. The facts in this case, with some unimportant distinctions, are remarkably similar to those considered in Paggett v. Travelers Indemnity Co. (La.App.2nd Cir., 1957), 99 So.2d 173, and Breland v. American Insurance Co. (La.App.2nd Cir., 1964, writs denied), 163 So.2d 583.
Mathews was not only free from any act of negligence but it is preponderantly established that he exercised, in observance and action, every requirement of due and reasonable care. To the contrary, Sutton was clearly guilty of negligence, particularly in failure to observe and heed the left turn signal timely given by the driver of a preceding car; in turning out of a line of traffic in an attempt to pass two or more cars at an approach to an intersection which could and should have been observed despite the fact that it was a private drive, and in driving at what was, under the circumstances, a careless and excessive rate of speed.
*42 Nor do we find any error of law in the imputation of Sutton’s negligence to Mrs. Ada Hawthorne as owner-passenger of the vehicle. It was established that Sutton and Mrs. Hawthorne had a date for the evening and there can be no question as to the conclusion that they were engaged upon a joint venture for their mutual pleasure and benefit. It cannot be disputed that Mrs. Hawthorne, as owner of the car, possessed a right to direct the course of travel and method of operation of the vehicle. The right of control cannot be interpreted exclusively as involving actual physical operation, but, unquestionably, applies to the choice of destination, the course of travel and the method of operation. Under such a circumstance, it is well established that the negligence of the driver is imputable to the owner-passenger. Frazier v. Calhoun (La.App.2d Cir., 1964), 165 So.2d 601, and authorities cited; Service Fire Insurance Co. v. Johnson (La.App. 3rd Cir., 1962), 138 So.2d 410; Buquet v. St. Amant (La.App.Orlcans, 1952, writs denied), 55 So.2d 645; Waguespack v. Savarese (La.App.Orl., 1943), 13 So.2d 726.
The case of Gaspard v. LeMaire, 245 La. 239, 158 So.2d 149, cited by learned counsel for defendants, is not factually analogous and is inapplicable, among other distinctions, because it deals with the principle of contributory rather than primary negligence.
Proceeding to a consideration of the quantum of damages, we perceive no necessity for detailed discussion. Mrs. Mathews, an able, qualified, experienced, Registered Nurse, sustained serious and painful injuries in the cervical and lumbo-sacral areas. The expert testimony abundantly establishes the serious nature and extent of these injuries, a substantial period of total disability and a residual permanent, partial disability with only the possibility of some alleviation by surgical intervention. At the time of trial, some sixteen months following the accident, Mrs. Mathews was still suffering a considerable degree of pain, discomfort and consequent inconvenience and inability to undertake any substantial physical exertion. The limitation of her physical activity impelled a discontinuance of her accustomed duties as a Registered Nurse and the acceptance of nursing employment at a reduced wage. The record amply supports the amount of $16,000.00 awarded by the district judge for pain and suffering, which allowance we find to be neither inadequate nor excessive.
There is a serious question as to the right of plaintiff husband in the companion suit to an increase of the judgment in his favor with respect to the loss of future earnings on the part of his wife. The district judge awarded the principal sum of $6,000.00, which included expenditures in excess of $1,000.00 made by the husband for medical services and treatment:
After careful consideration of the record it is our opinion that this allowance is inadequate and should be substantially increased. Mrs. Mathews was forty-three years of age at the time of the occurrence of the -accident, which would indicate a work life expectancy of nineteen years. The testimony of the expert witness, Dr. Trewatha, and the exhibits of his calculations and computations introduced in evidence is most instructive. Briefly summarized, it is shown that upon the basis of income tax returns from 1958 to 1962, inclusive, the witness calculated upon the basis of the arithmetic mean of days work an average number of 201 days per year at a rate of pay of $16.00 per eight-hour day, which standard rate of pay was shown ho have been increased after the year 1962 to $18.00. Offsetting the total loss of wages was the recognition of Mrs. Mathews’ employment as a nurse in the Louisiana Nursing Home at a rate of $325.00 per month.
According to the expert testimony, there can be no reasonable question as to the conclusion that Mrs. Mathews’ future earnings will be substantially reduced by reason of her inability to properly perform the full duties of her profession.
*43 The actual medical, hospital and drug bills paid by plaintiff husband were established in the sum of $1,079.38. The claim for wages lost up to the time of trial was contended by counsel to have been in excess of $2,000.00, and the minimum allowance with respect to loss of future wages was estimated in excess of $14,000.00.
There are many factors to be taken into consideration, among them being some imponderables such as the availability and willingness of Mrs. Mathews to work. This latter consideration would prohibit the acceptance, in their entirety, of the computations made by the expert. While we agree with the district judge that it is impossible to made an exact evaluation of the loss of earnings, we think plaintiff has established a basis for a substantial allowance in this respect. After thorough consideration, we think an award of $10,000.00, covering items of medical expenses and the loss of wages, past and future, would do substantial justice as between the parties.
For the reasons assigned the judgment appealed from is affirmed, and costs of this appeal are taxed equally between plaintiff and defendants.