368 So.2d 487 (1979)
William Scott FARMER, Plaintiff-Appellee,
v.
HARTFORD ACCIDENT & INDEMNITY COMPANY et al., Defendants-Appellants.
No. 6803.
Court of Appeal of Louisiana, Third Circuit.
February 15, 1979.
Rehearing Denied March 29, 1979.
*488 Gravel, Roy & Burnes by Chris J. Roy, Alexandria, for plaintiff-appellant, Deborah Crocker.
Stafford, Trimble, Randow & Smith by Russell Potter and Grove Stafford, Jr., Alexandria, for defendants-appellees, Ray Sharpe, et al.
Gist, Methvin & Trimble by H. B. Gist, Jr., Alexandria, for plaintiff-appellee Tom Hill and defendants-appellees Hartford.
Lauve & Hill by Blaise L. Hill and Lewis O. Lauve, Alexandria, for plaintiff-appellee, William Scott Farmer.
Before CULPEPPER, DOMENGEAUX, WATSON, GUIDRY and SWIFT, JJ.
GUIDRY, Judge.
The above entitled matter was consolidated for trial in the lower court with the following companion cases:

Tom Hill and Jenny R. Hill v. Kenneth R. Sharpe, et al., our docket number 6804; and,

Deborah Crocker, Individually, Etc. v. Ray Sharpe, et al., our docket number 6805. *489 The cases remain consolidated on appeal and we this day render separate opinions in each.
These consolidated cases arise as a result of a single vehicular accident which involved, either directly or indirectly, three vehicles: a 1974 Mack truck owned by Ray Sharpe and driven by Kenneth R. Sharpe; a 1974 Chevrolet Camaro owned by William Scott Farmer and driven by Claude Crocker; and, a 1964 Thunderbird, owned by Tom Hill and driven by Jenny R. Hill. The accident occurred on October 5, 1975, at approximately 1:30 p. m. At the time of the accident, the Camaro was traveling east on Louisiana Highway 112, toward Lecompte, Louisiana, with the truck following closely behind. Jenny Hill was traveling west on the same highway. Although some of the facts are disputed, it is undisputed that when the Camaro attempted to make a right hand turn into a private driveway, the truck collided with the right rear of the Camaro and then swerved into the westbound lane of Highway 112, causing Mrs. Hill, driver of the Thunderbird, to swerve into a ditch to avoid a collision with the truck. As a result of the accident Claude Crocker was killed and William Scott Farmer, a passenger in the Camaro, and Jenny R. Hill sustained serious personal injuries. In the Farmer suit (our docket number 6803) the following parties are made defendants: Hartford Accident & Indemnity Company (Hartford), insurer of the vehicle being driven by Claude Crocker; Kenneth and Ray Sharpe and their insurers, Bankers & Shippers Insurance Company of New York (Bankers) and National Indemnity Company (National); and Deborah Crocker. In the Hill suit, Hill v. Sharpe (La.App. 1979) 368 So.2d 499, Ray Sharpe, Kenneth Sharpe and their insurers, Bankers and National are made defendants. In the Crocker suit, Crocker v. Sharpe (La.App.1979), 368 So.2d 500, Ray Sharpe, Kenneth Sharpe and their insurers Bankers and National are made defendants, along with Travelers Indemnity Company (Travelers), the alleged insurer of Ray and Kenneth Sharpe, and Hartford, the uninsured motorist carrier of the Camaro automobile owned by William S. Farmer. Travelers was dismissed from this suit on motion for summary judgment. No appeal has been taken from this judgment of dismissal.
The trial court ultimately concluded that the accident was caused by the joint and concurrent negligence of the driver of the Camaro (Claude Crocker) and the driver of the Mack truck (Kenneth Sharpe) and rendered judgments in favor of William Scott Farmer and Tom and Jenny Hill and dismissed the suit of the widow and survivors of Claude Crocker. Judgments were rendered against all named defendants excepting Deborah Crocker and Ray Sharpe, plaintiffs' suits as to the latter two being dismissed for want of any evidentiary showing of liability on their part.
In the Farmer suit appeals were taken by Kenneth Sharpe, his insurers, Bankers and National, and Hartford. Farmer has answered these appeals seeking an increase in the quantum of damages awarded. In the Hill suit an appeal has been taken by Kenneth Sharpe and his insurers, Bankers and National. The Hills have neither appealed nor answered the appeal. In the Crocker suit plaintiffs have appealed and defendants have neither appealed nor answered the appeal.
The following issues are presented on appeal:
1. Was Kenneth Sharpe, driver of the 1974 Mack truck, negligent?
2. Was Claude Crocker, driver of the Camaro, guilty of negligence?
3. Did the trial court err in failing to impute the negligence of Crocker to William Farmer?
4. Did Kenneth Sharpe have the last clear chance to avoid the accident?
5. Did the trial court err in failing to hold Ray Sharpe liable under the doctrine of Respondeat Superior?
6. Are the trial court's awards of damages reasonable and supported by the evidence?

*490 I. WAS KENNETH SHARPE GUILTY OF NEGLIGENCE?
Kenneth Sharpe urges that prior to the accident, the Camaro signaled a left hand turn, pulled completely into the left or westbound lane, and then suddenly signaled a right hand turn, and pulled back into the eastbound lane directly into the path of his truck. The trial court concluded that for purposes of determining if Kenneth Sharpe was negligent, it did not matter whether Crocker had been attempting a wagon wheel turn from the left lane or executing his turn from the right lane. The court found that in either event, Sharpe's negligence was a proximate cause of the collision. In its written reasons for judgment, the trial court stated:
"Considering the testimony of all witnesses, the opinion of Dr. Tonn and Trooper Blunski and the physical evidence, there is no issue as to where the point of impact was. It was in the east bound lane. Also there is agreement that Sharpe was partly on the highway and partly on the shoulder.
The undersigned has viewed the scene of the accident in addition to analysing the scenes depicted in the photographs in evidence and the photographs of the damages to the vehicles. As a result, the undersigned is of the opinion that the testimony and opinion of Dr. Tonn and Trooper Blunski is not dispositive of the factual issues in the case. Considering any theory of facts leads to a conclusion that both Crocker and Sharpe were guilty of negligence and their negligence combined to cause both accidents. The second accident occurred after the collision between the truck and Camaro. The truck and trailer momentarily went out of the control of Kenneth R. Sharpe and careened over into the left, or west bound lane. Sharpe then regained control and brougth (sic) his unit to a halt down the highway on the right side. However, as Sharpe's unit entered the west bound lane it forced Mrs. Jenny Hill to take evasive action to avoid a head-on collision with the Sharpe truck. Mrs. Hill cut her Thunderbird to her right (north) and ran it into the ditch on the north side of the highway. Both Mrs. Hill and her passenger sustained injuries. (The passenger, Mrs. Salard, had settled her claims and was not a party litigant here.)
As stated above, both Sharpe and Crocker were negligent. Sharpe admittedly persisted in following too close to the Camaro at two to three car lengths. According to Sharpe, Crocker signaled a left turn and Sharpe sought to pass on the right side of the Camaro. It makes little difference whether Crocker was making a wagon wheel turn to the right from the left lane or attempted to turn from the right lane. Sharpe was following too close. Further, upon seeing the approach of Jenny Hill from the east he should have slowed and waited until the situation was clear before attempting to pass. If Sharpe was incorrect in his contention that Crocker was in the left lane when he began his right turn, Sharpe was still negligent. In such an instance, Sharpe was following too close, traveling too fast and failed to attempt to adjust in time to Crocker's action in slowing down and turning right."
Our careful review of the record supports the trial court's determination that Kenneth Sharpe was negligent.
LSA-R.S. 32:81 in pertinent part provides:
"A. The driver of a motor vehicle shall not follow another vehicle more closely than is reasonable and prudent, having due regard for the speed of such vehicle and the traffic upon and the condition of the highway."
The undisputed evidence establishes that at the time of the accident, Sharpe was operating his vehiclea large tractor trailer carrying a load of gravelalong a winding road at a speed of at least 45 miles per hour at a distance of approximately 50-60 feet behind the Camaro. Following the Camaro at such a distance under the circumstances was clearly negligent. In addition, the record reflects that under Sharpe's own version of the events directly preceding the *491 collision, when he saw the Camaro pull into the left lane, he accelerated in an attempt to pass the automobile on the right. The physical evidence establishes that at the time of impact, the truck was partially on the shoulder of the eastbound lane. Attempting to pass partially on the shoulder under the prevailing circumstances was likewise negligent action on Sharpe's part. Accomando v. St. Louis Fire and Marine Ins. Co., 228 So.2d 676 (La.App. 1st Cir. 1969). We agree with the trial judges conclusion that Sharpe was negligent in: a) failing to keep a proper distance between his truck and the Camaro, and b) attempting to pass on the shoulder, and that such negligence on his part proximately caused the ensuing collision.

II. WAS CLAUDE CROCKER GUILTY OF NEGLIGENCE?
The trial court concluded that even if it examined the evidence in a light most favorable to Claude Crocker, he was nevertheless contributorily negligent in causing the accident. In its written reasons for judgment, the court stated:
"Crocker was also negligent irrespective of whether he was in the left or right lane when he began his right turn. It was incumbent upon him to ascertain that he could safely make the right turn before he did so. A check to the rear would have shown Crocker that he could not safely slow down and make a right turn into a private driveway. He would have seen the truck following very close at his rear at a speed at which it could not stop or slow down quickly. He should have been aware of the oncoming Thunderbird which blocked the left lane of travel. We will never know whether Crocker actually saw the Sharpe truck trailer unit behind him. However, the evidence is uncontradicted to the effect that he turned on the turn indicator signal. Whether he signaled a left turn or a right turn is in dispute. Nevertheless, it is clear that Crocker made a turning maneuver, or began, to turn, to the right. Crocker failed to determine that he could not make the right turn he attempted. His action was a proximate cause of the collision of the truck with the rear of the Camaro and of the events which led to the action forced upon Mrs. Hill in leaving the highway to avoid collision with the truck."
LSA-R.S. 32:101 in part provides:
"The driver of a vehicle intending to turn at an intersection shall proceed as follows:
(1). Right turns. Both the approach for a right turn and a right turn shall be made as close as practicable to the righthand curb or edge of the roadway."
LSA-R.S. 32:104 in part provides:
"A. No person shall turn a vehicle at an intersection unless the vehicle is in proper position upon the roadway as required in R.S. 32:101, or turn a vehicle to enter a private road or driveway, or otherwise turn a vehicle from a direct course or move right or left upon a roadway unless and until such movement can be made with reasonable safety.
B. Whenever a person intends to make a right or left turn which will take his vehicle from the highway it is then traveling, he shall give a signal of such intention in the manner described hereafter and such signal shall be given continuously during not less than the last one hundred (100) feet traveled by the vehicle before turning.
C. No person shall stop or suddenly decrease the speed of a vehicle without first giving an appropriate signal in the manner provided herein to the driver of any vehicle immediately to the rear when there is opportunity to give such signal."
In the recent case of Fidelity & Casualty Company of New York v. Continental Casualty Company et al., 347 So.2d 1224 (La. App. 1st Cir. 1977) our brethren of the First Circuit summarized the duties incumbent on a turning driver under the cited statutes stating:

"Thus, whether a driver intends to make a left turn or a right turn, he must under the statute: (1) make certain that he can complete the maneuver without endangering *492 traffic approaching from the front or rear; (2) make certain that any sudden decrease of speed on his part will not endanger the following vehicles; and (3) give timely and adequate signal of his intention. Reeves v. Caillouet, 46 So.2d 373 (La.App. 1st Cir.) (1950); McNeely v. United States Fidelity & Guaranty Company, 69 So.2d 600 (La.App. 2nd Cir. 1953); Nomey v. Great American Indemnity Company, 121 So.2d 763 (La.App. 2nd Cir.) (1960); Foreman v. American Automobile Insurance Company, 137 So.2d 728 (La.App. 3rd Cir.) (1962); Aetna Casualty and Surety Company v. Henry, 307 So.2d 375 (La.App. 1st Cir.) (1974); and Dupre v. Olympic Insurance Company, 232 So.2d 544 (La.App. 3rd Cir.) (1970)."

Although LSA-R.S. 32:104 provides that the signal of one's intention to turn must be given continuously during "not less" than the last one hundred (100) feet traveled before turning, it is axiomatic that the timeliness and/or adequacy of the signal must be judged on the factual circumstances of each case, i. e., speed of the vehicles, the proximity of vehicles approaching from the front or rear, sharpness of the turn to be executed, etc. The trial judge did not categorically determine whether the Crocker vehicle displayed a left or right turn signal; whether such vehicle was in the left or right lane before turning; or, the distance west of the driveway when the turn indicator was first activated. However, the evidence presented, considered in a light most favorable to the Crocker vehicle, would indicate that the vehicle was in the right lane and the right turn signal was activated a distance of 150 feet west of the driveway. The trial court considered the evidence in this light and determined that Crocker was negligent concluding that, under the particular circumstances of this case, when Crocker's intention to turn was formed and his turn signal activated "a check to the rear would have shown Crocker that he could not safely slow down and make a right turn into a private driveway."
We have painstakingly considered the record in this case in light of the standard of appellate review of facts as enunciated in Canter v. Koehring Co., 283 So.2d 716 (La. 1973) as further defined in Arceneaux v. Domingue, et al., 365 So.2d 1330 (La.1978), and conclude that there is no manifest error in the trial court's conclusion that Crocker violated the duties imposed upon him by the cited statutes.
It is undisputed that just prior to the accident, Crocker drove the Camaro into the eastbound lane of Highway 112 from the parking lot of a small store located on the south side of the highway, approximately 1000 feet west of the point of collision. When the Camaro pulled out onto the highway, it did so in such a manner as to cause Sharpe to slow his truck down in order to allow the Camaro to proceed in front of him. The Sharpe truck and trailer, fully loaded with some 22 yards of gravel, proceeded some two or three car lengths behind the Crocker vehicle at a speed of about 45 m. p. h. There is no evidence in the record which would even suggest that Sharpe ever lessened his speed or that the distance between the two vehicles was ever more than about sixty feet. Under such circumstances we cannot say that the trial judge clearly erred when he concluded that when Crocker formed his intention to turn a check to the rear would have disclosed that he could not safely slow down and make a right turn into a private driveway and his persistence in doing so was a proximate cause of the collision of the truck with the rear of the Camaro. As stated in Nesbit v. Travelers Ins. Co., 218 So.2d 396 (La. App. 2nd Cir. 1969):
". . . , where a motorist traveling on a highway intended to make a turn into a private driveway and was being closely followed by a truck, it was incumbent upon the motorist to keep his automobile in the right-hand lane of traffic and make no attempt to enter the private driveway unless he could do so safely, and, if he could not make a safe entry into the driveway, he should have permitted the following vehicle to pass before making the turn. Swift v. Barnett, 84 *493 So.2d 241 (La.App. 2d Cir. 1955)." at pg. 398

III. DID THE TRIAL COURT ERR IN FAILING TO IMPUTE CLAUDE CROCKER'S NEGLIGENCE TO WILLIAM FARMER?
Kenneth Sharpe urges on appeal that Claude Crocker's negligence should be imputed to the owner of the Camaro, William Farmer, and that he should be thereby precluded from recovering damages from defendants for injuries sustained in the accident. In support of his position, counsel for Sharpe relies upon the case of Mathews v. Employers Mutual Fire Ins. Co. of Wisconsin, 180 So.2d 38 (La.App. 2d Cir. 1965), wherein an owner-passenger was cast in judgment along with the negligent driver to a third party who suffered injuries in an accident caused by the negligence of the driver under a theory of imputed negligence. We decline to follow Mathews, supra, as in our view that decision is clearly contrary to the holding in Gaspard v. LeMaire, 245 La. 239, 158 So.2d 149 (1963). In Gaspard, supra, our Supreme Court emphatically rejected the theory that negligence of the driver should be imputed to the nonnegligent owner-passenger on the ground that the latter had a theoretical right of control over such driver. In doing so the organ of the court stated:

"We cannot subscribe to these holdings if they are intended, as seems to be the case, to impose a bar to recovery by the owner-passenger (or even a borrower-passenger, see Monroe v. Heard (La.App.) 168 So. 519) against a negligent third person by imputing to him the negligence of the driver of his car solely on the ground that he had a theoretical right of control over such driver. It is unrealistic to hold, in the present day uses of motor vehicles when heavy traffic is the rule and not the exception, that the occupant of a motor vehicle has factually any control or right of control over the driving of the operator. Therefore, in the absence of a relationship of principal and agent or other legal relationship for which responsibility is imposed on one of the parties for the fault of the other or of independent contributory negligence of the passenger, or a showing that the parties were engaged in a joint adventure, no cogent reason exists for denying to the injured passenger recovery against a third person who has been guilty of negligence having causal connection with the accident."

The trial court in rejecting this contention apparently found that the evidence fell short of establishing that any principal and agent or other legal relationship existed between Crocker and Farmer. We discern no manifest error in this conclusion.
In the recent case of Umbehagen v. Liberty Mutual Insurance Company, 348 So.2d 122 (La.App. 1st Cir. 1977) writs refused Oct. 26, 1977, which is factually analogous to the instant case, our brethren of the First Circuit, in rejecting a like contention stated:

"The applicable law is stated in the case of Gaspard v. LeMire, 245 La. 239, 158 So.2d 149 (La.1963), quoting with approval the following on page 152:
`"As a general rule, it may be said that in order to impute the negligence of one person to another, there must exist between them some relation of master or superior and servant or subordinate or other relation akin thereto. The relation between them must be one invoking the principles of agency, or the persons must be co-operating in a common or joint enterprise, or the relation between the parties must have been such that the person to whom the negligence is imputed must have had a legal right to control the action of the person actually negligent. As the rule is stated by American Law Institute, the relation between the plaintiff and the third person must be such as to make the plaintiff responsible at common law for the negligent conduct of such third person."' * * *

`We are in accord with the views expressed by the American Law Institute Restatement and we hold that unless a plaintiff could be held responsible, as a *494 matter of law, for the torts of the person whose negligence is sought to be charged to him the doctrine of imputed negligence cannot be applied.

In that case the court rejected the proposition that a mother passenger who had the theoretical right of control over the son's operation of the family automobile was barred from recovery by imputation of the driver's son's negligence. In so ruling, the court specifically disapproved of the case of Rodriguez v. State Farm Mutual Insurance Company, [La.App. 88 So.2d 432] supra, insofar as it imputed negligence solely on the ground of theoretical right of control. Considering the facts in this case, we find the principles of Gaspard to be controlling, and that Mrs. Vanney is not barred from recovery."

Considering the facts of the instant case in light of the holding in Gaspard, supra, we find that the trial court correctly concluded that William Scott Farmer is not barred from recovery by the negligence of Claude Crocker.
IV. DID KENNETH SHARPE HAVE THE LAST CLEAR CHANCE TO AVOID THE ACCIDENT?
In rejecting appellants' contention that Kenneth Sharpe had the last clear chance to avoid the accident, the trial court stated:

"With respect to the invocation of the doctrine of last clear chance on behalf of the Crockers, the undersigned is of the opinion that the requisite facts for application of the doctrine have not been shown. Williams v. Inabnett, 345 So.2d 1294 (La.App. 3rd Cir. 1977). It has not been made to appear that Sharpe could have avoided the accident after he perceived that a right turn was being made. Sharpe was negligent for following too close. There is no evidence that the speed and distance factors afforded him a clear chance to avoid the accident after the right turn was actually indicated.[1]. . ."
In order for the doctrine of last clear chance to apply, Sharpe must have discovered Crocker to be in a position of peril at a time when Sharpe could have taken some action to avoid the accident. We find, as did the trial court, that at the moment Sharpe realized Crocker's position of peril, there was no evasive action which he could have taken to avoid the collision, and consequently the doctrine of last clear chance has no application in this case.
V. DID THE TRIAL COURT ERR IN FAILING TO HOLD RAY SHARPE LIABLE UNDER THE DOCTRINE OF RESPONDEAT SUPERIOR?
It is urged by counsel for Deborah Crocker and Jenny and Tom Hill that Kenneth Sharpe was employed by his father, Ray Sharpe, and was in the course and scope of such employment at the time of the accident. The trial court, however, dismissed all demands against Ray Sharpe, finding that the evidence failed to disclose any liability on his part, apparently based upon a determination that the evidence did not establish that there had been an employment relationship between Ray and Kenneth Sharpe at the time of the accident. The existence of an employment relationship is essentially a mixed question of law and fact which will not be disturbed in the absence of manifest error. Our examination of the record discloses no manifest error on this issue, and we affirm the judgment of the lower court dismissing all claims against Ray Sharpe.

VI. WERE THE TRIAL COURT'S AWARDS OF DAMAGES IMPROPER?
Defendants allege that the awards to William Farmer of $50,000.00 for his injuries and $139,000.00 for loss of future income, as well as the award of $20,000.00 to Jenny Hill for her injuries were excessive. We disagree.

*495 A) William Farmer
The record reveals that as a result of the accident, William Farmer suffered extensive injuries, including six fractured ribs, a fractured clavicle, a fractured scapula, numerous contusions, including contusions to his kidney and bladder, a punctured lung, and numerous residual protrusions at fracture sites. He was hospitalized for nine days following the accident, and experienced considerable pain and discomfort during the recuperative period. The evidence indicates that he will experience additional pain in the future due to abnormal healing processes of the fractures, producing the abnormal union of several bones. As a result of the accident, he suffers a neurological disorder known as "Horner's Syndrome", which causes his right eyelid to droop, and produces frequent headaches. He also has a permanent three inch scar on his forehead. We find that the general damage award to Mr. Farmer in the sum of $50,000.00 was made with careful consideration of the evidence and was within the discretion of the trial court.
The trial court concluded that as a result of the accident, William Farmer will suffer a net loss of earning capacity in the amount of $4,800.00 per year until he reaches age 65, or a total loss of earnings in the amount of $139,200.00.[2] At the time of the accident, Mr. Farmer worked as a carpet installer. Part of his duties included the carrying of large rolls of carpeting and the moving of furniture. Co-workers of Mr. Farmer testified at trial that following the accident, he was no longer able to do many of the tasks demanded of a carpet installer, and was unable to use certain tools required to install carpeting. Testimony of Mr. Farmer's former employer indicated that his attendance at work following the accident was sporadic, and that he had to go home early many times due to pain. In the trial court's written reasons for denying defendant's motion for a new trial, the court stated:
"From the evidence describing the trade of carpet layers it is evident that skill is a much less important factor than physical strength and physical endurance. Farmer has been materially affected in physical strength, agility and ability to use his tools. He has also been affected in physical endurance."
The trial court was in the best position to evaluate the testimony of the medical experts and to determine the extent of Mr. Farmer's residual disability. An award for future earnings cannot be made with mathematical exactitude, it is necessarily speculative in nature, and the appellate court must give great weight to the trial court's findings. We find no abuse of discretion on the part of the trial court in making an award of $139,200.00 to Mr. Farmer for loss of earnings.
B) Mrs. Jenny Hill
Appellants urge that the trial court erred in awarding Mrs. Hill the sum of $20,000.00 for her injuries. We find that this award was made after a thorough evaluation of the medical evidence, and we will not disturb it on appeal. Shortly after the accident, Mrs. Hill complained of pain in her neck, right upper extremity and lumbrosacral spine. She was diagnosed as having sustained mild sprains of these areas. She complained of numbness in the right arm which was diagnosed as outlet thoracic syndrome. She complained also of earaches, and difficulty hearing. Surgery was performed to alleviate the numbness in her arm, but she nevertheless suffers a certain degree of residual pain. She has been able to work as a cashier at K-Mart, but after a full day at work, she develops pain in her arm. We do not find that the general damages award of $20,000.00 constitutes a manifest abuse of discretion on the part of the trial court.
For the above and foregoing reasons, we affirm the judgment of the trial court. Costs of this appeal are to be paid by appellants.
AFFIRMED.
*496 SWIFT, J., concurs in part and dissents in part.
CULPEPPER, J., dissents in part and assigns reasons.
WATSON, J., concurs in part and dissents in part and assigns reasons.
CULPEPPER, Judge, dissenting in part.
I respectfully dissent from the majority holding that Claude Crocker was contributorily negligent. It is my view that Crocker, the driver of the Camaro, fully complied with all of the duties of a motorist making a right turn from the highway, and that the sole cause of this accident was the gross negligence of the heavily loaded tractortrailer in literally running over the smaller vehicle.
Of course, I agree with the statutory rules stated in the majority opinion that a right turn shall be made from the righthand lane of the roadway, that a motorist intending to make a right turn must reasonably ascertain that such movement can be made with safety, that he must give a signal of such intention for not less than 100 feet, and that he must not suddenly decrease his speed or stop without adequate warning to the vehicle in the rear. In the present case, I think Crocker reasonably complied with all of these duties.
Both the trial judge and the majority in this Court find that the Camaro and the truck were proceeding at a speed of about 45 miles per hour, with the truck 50 to 60 feet to the rear, that Crocker intended to turn to the right, that he gave a turn signal for about 150 feet prior to turning, and that he slowed down gradually and turned to the right into the private driveway.
Neither the trial judge nor the majority decided whether Crocker gave a left or a right turn signal or whether he was in the left or the right-hand lane at the time he commenced his turn, they being of the opinion that in any event Crocker was negligent for failing to keep a sufficient lookout to the rear. I find a preponderance of the evidence shows Crocker gave a right turn signal. Mrs. Hill and her passenger, who were in the vehicle approaching from the east, testified that when they first saw the Crocker vehicle, it had on its right turn signal lights. Also, there was no road to the left near the point of impact. Additionally, the evidence clearly shows that he actually turned to the right. The testimony of the truck driver, Sharpe, and his witness that Crocker gave a left turn signal is not worthy of belief.
As to whether Crocker drove into his left-hand lane and commenced his right turn from there, Mrs. Hill and her passenger testified to the effect that when they first saw the Crocker vehicle its left-hand wheels were slightly over the center line. Mrs. Hill and her passenger probably first saw the Crocker vehicle when it was in the curve approaching the private driveway. By the time Crocker commenced his turn, he probably at most had his left wheels at or near the center line. He probably was in the right-hand lane by the time he actually started to turn. This is indicated by the fact that at the time of the impact the large truck was partially on the east shoulder and the Crocker vehicle was entering the driveway.
Thus, I find no negligence by Crocker in the execution of his right turn. Of course, neither the trial judge nor the majority find any negligence in this respect. The only negligence found by the trial judge and the majority as to Crocker is that he failed to observe the truck was following too close for Crocker to turn to the right in safety.
Crocker died as a result of the accident, so we don't have his testimony as to whether or when he saw the truck to his rear. The district judge concluded, and the majority agrees, that before making his right turn Crocker had the duty to observe that the truck was following too close, at too great a speed and with too heavy a load to be able to slow down sufficient to avoid striking Crocker as he made his right turn. I think this places an unreasonable burden of observation and care on the right-turning motorist.
This case is similar to Fidelity & Casualty Company of New York v. Continental Casualty *497 Company, 347 So.2d 1224 (La.App. 1st Cir. 1977), where the following vehicle, a tractor-trailer, swerved into the left lane and struck an oncoming vehicle, in order to avoid the right-turning motorist. The court noted that the preceding motorist was making a normal and orderly right turn, that there was no evidence that he failed to give a proper turn signal or that he suddenly decreased his speed. The court concluded the accident was caused solely by the negligence of the truck driver in following too close at too great a speed and not keeping a proper lookout.
This case is readily distinguished from Schwartzberg v. Clark-Dunbar, Inc., 309 So.2d 754 (La.App. 3rd Cir. 1975), and Williams v. State Farm Mutual Automobile Insurance Company, 266 So.2d 718 (La.App. 3rd Cir. 1975), where the preceding motorists made sudden, unsignaled and unnecessary stops in the highway.
Also applicable here is the rule that the motorist proceeding in compliance with the law can assume that other motorists will likewise observe the law until he sees or should see that the other motorist is not going to comply with the law. Waters v. Pharr Bros., Inc., 228 So.2d 91 (La.App. 2d Cir. 1969); Hughes v. Whitten, 276 So.2d 405 (La.App. 2d Cir. 1973). Under this rule, Crocker had a right to assume that the truck driver would see his right turn signal, that he would observe that Crocker was slowing down and preparing to make a right turn, and that as a result of these observations, the truck driver would not follow too close or at such a speed with such a load that he could not avoid the collision.
Of course, the motorist who is in his own lane and is struck from the rear is presumed to be free of negligence, and the burden is on the following motorist to prove negligence. We don't know whether Crocker looked to the rear and saw the truck behind him. However, we must assume, as the trial judge did, that Crocker did make this observation. The question is when is he assumed to have made his observation, and what did he see or should he have seen. If he looked to the rear before or at about the time he initiated his right turn signal, 150 feet before impact, he would have seen the truck following at a distance of 50 to 60 feet and at a speed of about 45 miles per hour. From this observation, it would have been reasonable for Crocker to assume that as he reduced his speed the truck would also, and that he could make his right turn in safety. It may be that actually the truck could not have slowed down sufficiently within 200 feet, because of its heavy load, and because of the fact that it had actually begun to accelerate as a result of the truck driver's erroneous and unreasonable assumption that Crocker was going to turn to the left, instead of to the right. Nevertheless, Crocker should not be required to observe that the truck was heavily loaded and that it was accelerating. The ordinary reasonable right-turning motorist should not be required to anticipate such gross negligence on the part of a truck following behind him.
Assuming that Crocker looked to the rear and observed the truck at some point within the 150 feet before impact, it would probably have been too late for Crocker to take any action which would have avoided the accident. The truck was traveling too close with too heavy a load at too great a speed to avoid the collision.
I conclude this accident was caused solely by the gross negligence of the driver of the tractor-trailer rig.
For the reasons assigned, I respectfully dissent in part. Otherwise, I vote to affirm.
WATSON, Judge, dissenting in part and concurring in part.
In the captioned case which was consolidated with No. 6804, Hill v. Sharpe, 368 So.2d 499 (La.App. 3 Cir. 1979) and No. 6805, Crocker v. Sharpe, 368 So.2d 499 (La.App. 3 Cir. 1979), I respectfully submit the following reasons.
As to liability, I agree with the majority that Kenneth R. Sharpe was negligent but disagree with the conclusion that Claude Crocker was negligent. In my opinion, the *498 trial court was manifestly in error. Too stringent a burden of conduct was placed on the right turning motorist under the facts of the case. I also adopt the reasons assigned by Culpepper, J. on this point.
As to quantum, I agree with the affirmation of the award of general damages to William Farmer. However, the trial court and the majority has fallen into grave error in failing to discount the award for loss of future wages. While there may be some question as to the annual loss of wages of $4,800 (as persuasively suggested by Swift, J.), I would defer to the trial court's much discretion in fixing the annual loss. However, the trial judge made an error of law in holding that the Coco case establishes a rule that loss of future wages must not be discounted to present value in Louisiana.
In Coco, the jury awarded a very substantial lump sum of damages, including both general and special, to the plaintiff. One witness, an expert in economics, testified that plaintiff's loss of future wages might amount to as much as $225,000. This expert said that the wages should not be discounted due to various factors and the Supreme Court noted his testimony as one reason for not reducing the large award. I think this falls short of establishing a rule, either: (1) that future wages lost are never to be discounted; or (2) that expert testimony must establish whether there will be a discount in each case.
If our courts are to try the question of discount in each case, I suggest that an unfair burden will be placed on all concerned, including the attorneys, the litigants and the courts. If there is to be no discount, I suggest that an unfair burden will be placed on those cast in judgment and that unjust enrichment will result to the party recovering. For example, in the present case, the trial court awarded and the majority affirmed $139,200, simply taking the $4,800 annual loss of future wages and multiplying by 29 years. All Farmer has to do, is invest the proceeds at 10%, which is currently available on longterm certificates of deposit and make more money each year than he ever has before, with the added benefit of having the $139,000 intact at the end of the 29 years.
Even after Farmer pays his attorney the customary fee, he will still have almost $100,000 of his award for loss of future wages to invest as suggested above.
I strongly suggest that Farmer's loss of future wages should be discounted at the rate of 6% over the period of 29 years. According to American Jurisprudence 2d Deskbook, Document 133, a factor of 13.591 should be used and when it is multiplied times $4,800 the resulting figure is $65,236.80, an appropriate award for this item of damages. See Lanclos v. Hartford Accident & Indem. Co., 366 So.2d 621 (La.App. 3 Cir. 1978). There would be no abuse of discretion in awarding a slightly higher (or lower) amount, but the award of $139,200 is clearly wrong.
Therefore, I respectfully concur in part and dissent in part.
SWIFT, Judge, dissenting in part.
With all due respect, I dissent from the affirmation by the majority of that part of the judgment in Suit No. 6803 on the docket of this court awarding William Scott Farmer $4800.00 per annum until he reaches 65 years of age, a total of $139,200.00, for loss of future earnings.
Mr. Farmer suffered a severe crushing of his chest wall and right shoulder, including numerous fractures, as well as a Horner's Syndrome of his right eye, and was subjected to considerable pain and suffering. Consequently, I do not question that the award of $50,000.00 for general damages was within the "much discretion" afforded the trial judge. However, I am convinced this is not the case with respect to the award for future earnings.
After nine days in the hospital and about five additional weeks of recuperation the plaintiff, to his credit, resumed his occupation installing carpet with his crew on a contract basis. At first, because of soreness and headaches (for which he took only an ordinary sedative), he was unable to do the heavy lifting and employ what is known in *499 the trade as a "knee kicker" to stretch carpet. Around January 1, 1976, he was employed by Ray Warren and worked with the latter's brother, Victor, on an hourly basis laying carpet. Both earned approximately $5,000.00 in 1976 (Victor estimated his at $5,000.00 to $6,000.00), despite the fact that Farmer's work was limited by what his doctor termed a "slight instability of the right sternoclavicular joint" which was subjected to a great deal of stress while using a carpet stretcher. Farmer and Victor Warren testified the plaintiff could not lift the carpet rolls or use a knee kicker and that he missed a number of days of work from time to time because of pain and suffering. The plaintiff contended he could have made more money if his disability had not prevented him from working more hours. Nevertheless, both Farmer and Victor continued in their same jobs with Ray Warren receiving the same rate of pay until the end of 1976 when their employer retired and gave them his tools. Farmer and his partner were still in the same business dividing the profits equally when the case was tried. They had no records to establish their earnings for 1977, nor did they estimate same. Victor Warren testified they were unable to work four or five days each month, because on such occasions they did not have money to purchase the necessary supplies. Mr. Farmer said he had difficulty getting carpet in the first part of 1977 and there were no jobs on which to bid at the time of the trial. He said, however, he could make more than $6,000.00 per year "if I can get enough work". According to the W-2 forms filed in evidence, the plaintiff's gross wages as a carpet salesman were $6,088.26 in 1973 and $6,245.00 in 1974. For the three months period immediately preceding the accident of October 5, 1975, during which the plaintiff changed from his usual occupation selling and estimating carpet to an independent contractor partnership installing carpet, he and his partner grossed $2,045.00 and incurred expenses found by the trial judge to be $100.00 per month. Projected for a 12 month period, this would indicate an annual earning for the plaintiff in his work of carpet installation before the accident of $6,980.00, or $735.00 more than he earned in 1974 selling carpet.
From my review of the record I have some doubt as to whether the plaintiff has established to any degree of certainty that he will sustain a loss of earnings in the future by reason of this accident. But I certainly am convinced that the evidence does not establish with reasonable probability that he will lose $4800.00 annually for the next 29 years of his life as a result thereof. Also, like Judge Watson, I must dissent from the failure of the majority to discount the annual loss of future earnings in the computation of the award.
For these reasons, I respectfully dissent in part, but otherwise vote to affirm the trial judge's decision in these consolidated cases.
NOTES
[1] "Note that a vehicle traveling at the rate of forty miles per hour is traveling at the rate of 58.7 feet per second. At fifty miles per hour a vehicle travels at the rate of 73.3 feet per second."
[2] Other special damages totalling $3,460.90 were awarded to Mr. Farmer, which are not herein disputed.